No reversible error is shown in this case. The judgment is affirmed.

———————

BRINKLEY v. STATE. (No. 4638.)

(Court of Criminal Appeals of Texas. Nov. 14, 1917.)

1. ASSAULT AND BATTERY ⊙═92 — "ASSAULT WITH PROHIBITED WEAPON."

Acts 33d Leg. c. 114, § 1 (Vernon's Ann. Pen. Code 1916, art. 1024a), under which accused was indicted, provides that if any person shall willfully commit an assault upon another with a pistol, being carried unlawfully, he shall be deemed guilty of an assault with a prohibited weapon. The following article provides that such section shall not be construed to affect Pen. Code 1911, art. 475, relating to unlawfully carrying arms. The state's theory was that accused shot prosecutor with intent to kill him. Held, that under such theory, and accused's evidence that he fired in self-defense and in defense of his brother, there could be no conviction, under article 1024a, which required unlawful carrying of weapon, which was not made out, in view of testimony of accused and his brother that the pistol was carried in the wagon box.

2. ASSAULT AND BATTERY ⊙═86—PARTICULAR OFFENSES — ASSAULT WITH PROHIBITED WEAPON—EVIDENCE—ADMISSIBILITY.

In prosecution under Acts 33d Leg. c. 114, § 1 (Vernon's Ann. Pen. Code 1916, art. 1024a), for assault with prohibited weapon, it was error to exclude accused's testimony that he feared the prosecutor and asked protection from officers, which was refused.

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Jake Brinkley was convicted of an offense, and he appeals. Reversed and remanded.

E. S. Chambers and T. T. Thompson, both of Clarksville, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J.    Appellant was tried and convicted under article 1024a of the Acts of 1913, found in Branch's Ann. Penal Code at page 940. His punishment was assessed at 18 months in the penitentiary for willfully making an assault upon Maynard Wilburn.

The indictment contains two counts, one for assault to murder, and the other for willfully making an assault on Wilburn with a weapon unlawfully carried. Both counts were submitted; the jury convicted, however, under the second count.

Briefly stated, the evidence shows that Ben Brinkley, jointly charged with appellant, had killed one of the Wilburns. There was evidence that Maynard Wilburn had made threats against all of the Brinkleys. In the evening of and prior to the trouble defendants and Maynard Wilburn were in the town of Clarksville. Defendants were uneasy from the movements of Maynard Wilburn that he might institute trouble with them, and they believed him to be armed. For this reason they avoided him, and finally left town. Directly after their departure Wilburn followed and overtook them about two miles south of Clarksville. A shooting scrape occurred. Wilburn testified that as he passed the Brinkleys in their wagon, he being in a buggy, Ben Brinkley shot him, the ball striking him under the left shoulder, ranging around to the front; that he fell from his buggy, and Ben Brinkley shot at him a time or two. He got up and secured his pistol, which was in the buggy.

Brinkley's testimony shows that as Wilburn passed them he ran his buggy in front of their team and caught the doubletree at the front of the team and reached to pull his pistol. As he did this Brinkley pulled his pistol and fired. Several shots were exchanged, one of which struck Wilburn, which he claimed to be the first shot fired. Appellant testified that he did not carry a pistol, and was not armed; that after the difficulty began his brother informed him that there was a pistol in a box in the wagon, and requested that he secure it and assist him in defending himself; that he went to the box, secured the pistol as directed by his brother, and fired a couple of shots.

[1] If Ben Brinkley made an assault under the circumstances detailed by Wilburn, it would constitute him the aggressor. If Wilburn drew his pistol, or attempted to do so, Ben Brinkley acted in self-defense, and Jake, the defendant, had the right to come to his brother's assistance. The state's evidence conveys the idea that Ben Brinkley fired at Wilburn with the intent and purpose to kill. If so, this act will not bring it within the terms of article 1024a, supra. That statute reads thus:

"If any person shall willfully commit an assault, or an assault and battery, upon another with a pistol * * * while the same was being carried unlawfully by the person committing said assault, he shall be deemed guilty of an assault with a prohibited weapon, and upon conviction shall be punished by confinement," etc.

———————

The succeeding article provides that this statute shall not be construed to in any manner affect article 475, Revised Penal Code 1911, relating to unlawfully carrying arms, but shall be cumulative thereof. Article 1024a, supra, evidently was intended to create a distinct offense. This is evidenced by the casual reading of the statute. That article provides expressly that, in order to constitute such offense, the person must willfully commit an assault, or an assault and battery, upon another with a pistol unlawfully carried, as inhibited by article 475, supra. It will therefore be observed that there must first be an assault, or assault and battery; second, it must be willfully committed; and, third, by the use of a weapon unlawfully carried, which necessarily carries with it the idea that the weapon must be carried in violation of law. The terms of these statutes embody and convey the idea that the weapon must be unlawfully carried as inhibited by article 475, supra. Unless the weapon is thus carried, this offense would not be chargeable. The assault, being willful, must be aggressive. This excludes necessarily the idea of self-defense. It may be also noticed that by the language of the statute assaults with ulterior purposes or intents are excluded from its operation. This statute, therefore, was enacted to carve out a particular or peculiar character of assault such as is therein defined, making it different from other assaults, and especially of assault with ulterior intents and purposes. It therefore would not constitute the offense of assault to murder, because that offense carries an ulterior purpose or design and intent, and prescribes an entirely different penalty. They are not in conflict with each other. Article 1024a, supra, does not directly, or even by implication, repeal or interfere with the definition of assaults with such ulterior purposes or intents. It does not repeal the law of aggravated assault. An aggravated assault may be committed by the use of a deadly weapon, and this whether that weapon be carried lawfully or unlawfully. Under this statute, however, the assault is not chargeable unless the weapon is unlawfully carried, and it would make no difference how aggravated the assault would be. This would not be true as to aggravated assault when committed with a deadly weapon. It is not essential that an aggravated assault be willfully done, as under this statute, or that it be done by a weapon unlawfully carried. That it may be so done might not relieve the party from being guilty of aggravated assault, for the act may be as willful under one statute as under the other, but there is an essential element distinguishing one from the other; that is, that under one the weapon must be unlawfully carried, while under the other this is not essential or necessary. Another essential difference also between this offense and aggravated assault lies in the further fact that the punishment is different. The evidence does not establish that defendant carried a pistol in contemplation of article 475, P. C., if it was in the box in the wagon. See Hardy v. State, 37 Tex. Cr. R. 511, 40 S. W. 299, and Thompson v. State, 48 Tex. Cr. R. 146, 86 S. W. 1033. The mere fact that appellant secured the pistol from the box to help his brother, under the circumstances under which it occurred, did not bring him within the inhibition of article 475, supra. Pyka v. State, 192 S. W. 1066. So it will be observed that under this statute assault to murder would not be included, while under some circumstances an aggravated assault might be. But under the statute under discussion an aggravated assault as defined in the statute would not be predicable. The essential difference, as before stated, lies in the peculiar definition; that is, that the weapon must be unlawfully carried as inhibited by article 475, supra.

[2] Two bills of exception were reserved to the ruling of the court excluding testimony offered by the defense to the effect that in the evening prior to the difficulty, while all the parties were in town, appellant, being uneasy about the life of his brother from the actions of Wilburn, went to the sheriff, and also to another officer, and requested protection of his brother against Wilburn, stating to them he believed Wilburn was armed. The officers declined to take any action. He also wanted to prove other facts and incidents showing such uneasiness, which is not necessary to detail. This was excluded. The court qualifies the bill by stating that this shooting occurred after the parties left town and were some miles south of town. The evidence shows that the difficulty occurred about two miles south of town, where Wilburn overtook the Brinkley brothers in a wagon. We are of opinion this testimony ought to have been admitted. The statute authorizes the carrying of a weapon where a party's life is in danger and he is in such condition he could not have the party arrested. They asked protection of these officers, and were refused such assistance. Defendants left town as soon as they could to avoid trouble, and went out a back street in order to avoid the very thing that later occurred. This testimony, we think, was admissible for more than one reason. Appellant sought to avoid this trouble as did his brother. He was declined assistance by the officers, and this testimony would bear upon the question of whether or not he unlawfully carried the pistol.

The judgment will be reversed and the cause remanded.