### Antonio Padron v. The State.

#### No. 1928. Decided February 28, 1900.

**1. Evidence—Self-Serving Declarations.**

Statements and declarations of a defendant which were in his own interest, made several hours after the occurrence, are self-serving and inadmissible as evidence.

**2. Witness—Impeachment.**

Where a witness' general reputation for truth and veracity has been impeached, evidence to the effect that the said witness is a violent and dangerous character and not easily frightened, is irrelevant and immaterial.

**3. Special Instructions—Practice.**

It is not error to refuse special requested instructions where the court has already given a sufficient charge upon the same issue.

**4. Charge—Alibi.**

On a trial for murder, if the evidence tends to show that defendant was at a different place from the scene of the homicide at the time of its commission, it is the duty of the court to charge upon alibi and especially when requested by defendant to do so. Overruling Byas v. State, ante, p. 51.

**5. Murder—Charge.**

On a trial for murder, the court did not err in refusing to give to the jury a requested instruction to the effect: "You are further instructed that to support a capital offense more is demanded by law than a strong suspicion or strong probability of guilt of accused. The evidence must to a moral certainty lead to the conclusion of his guilt beyond every reasonable hypothesis before you can convict defendant.

**6. Same—Verdict.**

On a trial for murder, where the verdict of the jury found defendant guilty of murder in the second degree, "as charged in the indictment," the verdict is good notwithstanding the indictment did not expressly charge murder in the second degree, but charged a murder which did include murder in the second degree.

APPEAL from the District Court of Nueces. Tried below before Hon. M. F. LOWE, on exchange with Hon. STANLEY WELCH.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Sabas Ramirez, on the 28th of February, 1899, by beating and kicking him. The following statement of the evidence adduced at the trial is taken from the brief of appellant:

The witness for the State, Martinez, testified that on Saturday, February 25, 1899, appellant, deceased, and witness, with others, were at the county convict camp near Alice, Texas, working out some fines and costs. That about sundown appellant and witness visited Losano's saloon, in Alice, where they found deceased and some of the others who had preceded them, drinking, and that they joined them. That deceased and appellant commenced to drink together; that both drank heavily, the deceased drinking the most, and witness sometimes drinking with them. That there was a dispute and contest between appellant and deceased as to which could drink the most liquor. That all three of them remained there drinking together until after midnight. That during that time they visited a gambling house in the back yard of the saloon. That the last time they returned to the saloon they found the front door closed, and that they all then left for camp, passing out the back door, then through an alleyway to the sidewalk in front of the saloon. That they proceeded to camp, but that when they got in front of a small house appellant and deceased again commenced to fuss, when appellant knocked deceased down, and after beating and kicking him for awhile, called to witness to stop. That he caught up with witness, and told him that he had killed deceased, because the latter's brother had knocked two of appellant's teeth out. That appellant then compelled witness to kneel down, raise his hands, and swear that he would never tell anybody about the tragedy. That they then proceeded to camp, where they were arrested that morning; and had been held in custody until the grand jury met, when witness was released. That when they were arrested appellant put a bloody towel in his pocket. To corroborate this witness and to connect appellant with the offense charged to have been committed, the State relied on the following facts, briefly stated, and testified to by its witnesses, to wit: By Losano, that appellant, deceased, Martinez, and others of the convict gang were drinking at Losano's saloon and continued to do so until after midnight. That during that time appellant and deceased had several disputes as to which was the best man at drinking liquor, each alternately buying small bottles of whisky or

mescal and drinking together. That while there appellant, deceased, and Martinez visited a gambling house in the back yard of the saloon several times together, each time returning to the saloon, and that the last time they returned, after midnight, the front door was closed. That the three then left by the back door, witness not seeing where or which way they went from the saloon. By Roark, Bates, Walker, and Whelan that deceased was found next morning lying unconscious in the street or road in front of witness Roark's house, severely injured about the head and face, which were bruised and very much swollen, with slight blood marks on the face and one of the ears, which was partly torn or cut away. That he appeared to have been beaten and kicked about the face and head, and there were bruises on his breast that looked as if they had been made by some one stamping on him. That the bruised places on the face and head appeared to have been made with the heel of a shoe; the prints of the nails could be clearly seen on the cheek of deceased's face. That appellant was wearing shoes when arrested, and that on comparison with said prints or marks on deceased's cheek, they were very similar and corresponded exactly. Deceased was removed to the ranger camp, where he died next day. That appellant and Martinez were arrested that day at the convict camp. The boss of the camp handed the officers making the arrest a towel with some blood spots on it, saying that it belonged to appellant. One of the officers also noticed some blood spots on the front and back of appellant's pants, one on the rim at the side near the back part, and another spot a little above; and stated that he knew and was certain it was blood, as he scratched it off with his finger nail. That defendant's pants were dark colored pants. To rebut the foregoing, appellant relied upon its weakness, as well as on the following facts, also briefly stated, and testified to by his witnesses, to wit: By Garcia and Sanchez and appellant, that the latter and deceased were very friendly. That appellant, being a barber, shaved deceased and cut his hair on Saturday evening just before they all went to the saloon. That the blood on the towel testified to by Martinez and Bates came from a cut made by appellant on Vivian Herrera's neck while shaving him the same evening he shaved deceased. By Losano and appellant, that while appellant and deceased had two or three disputes and were fussing as to which could drink the most liquor, they did not quarrel, but appeared to be friendly and contented with each other; and that when Losano told them not to make a fuss in the saloon, appellant told him not to be afraid, they would not fight. By Martinez, Losano, and appellant, that the latter, with Martinez and deceased, all left the saloon by the back door when Losano closed the front door; Losano stating that when they went out he did not see which way or where they went. By appellant, that Martinez and deceased went towards the gambling-house again and that he started for the convict camp, taking the public road. That he had gone some ways when Martinez caught up with him out of

breath and scared, saying that they (meaning the gamblers) were mad because appellant had taken two quarters from the table, and proposed that they run, which they did, finally reaching camp, where they were arrested next morning. By appellant, that he did not kill deceased, as they were friendly, and he had nothing against him. By Rios, Dr. Cutler, and appellant, that appellant bled quite often and profusely from the nose, ears, and throat the day after he was brought from Alice and placed in jail at Corpus Christi, charged with the murder of deceased; and that the blood would sometimes drop on his clothes. That Dr. Cutler was called in as county physician to treat him for these troubles. That he continued to be so afflicted, and that Dr. Cutler was treating him at the time of this trial for same. That defendant had been so afflicted for several years. Appellant further stated that he did not have blood on the bottom of his pants as testified by the ranger. That the pants he wore on this trial were black pants and the same that he had on when the ranger arrested him. They had blood spots on them below and above the knee when he was arrested, and that these spots came from his nose while it was bleeding, and that they would not wash out. Martinez and Deputy Sheriff Riggs testified that Martinez had been convicted in 1892 in the District Court of Nueces County for an assault with intent to murder and had nearly completed his sentence of three years when he was pardoned. Martinez further testified that he had been convicted in the magistrate's court several times for disturbing the peace. Deputy Sheriff Riggs, Constable Kelly, Justice of the Peace Dunn, Marshal Niland, and Policeman Lege all testified that they had known Martinez for many years in Corpus Christi, where he lived. That they knew his general reputation for truth and veracity in that community, and that said reputation was very bad.

*Delmas Givens,* for appellant, filed an able and elaborate brief.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of fifteen years.

Appellant reserved an exception to the court's refusal to allow him to propound the following questions on cross-examination of the State witness W. B. Bates: "Immediately after arresting defendant, did you ask him where the dead man was? Did he [defendant] not say that he left him in the back part of Losano's saloon, and that he knew nothing more of his whereabouts?" The State objected on the ground that same were self-serving declarations on the part of appellant; and the court, in his qualification to the bill, states that the statements were made many hours after the killing. We think the

State's objection was well taken, and the court did not err in sustaining the same.

Appellant also complains of the court's refusal to permit him to propound to his witnesses Lee Riggs, Mike Nilar, Dennis Kelly, Herman Lege, and Jos. Dunn, on direct examination, the following questions: "Do you know the general reputation of the State's witness Zeferino Martinez, in the community in which he lives, for being a law-abiding and peaceable man? And did you know whether he is a man easily frightened or intimidated?" The State objected because irrelevant and immaterial, which objections were sustained by the court. Appellant had been permitted to examine all of said witnesses to the reputation of the prosecuting witness for truth and veracity in the community in which he lived, and all of them had stated that his reputation in that regard was bad. We do not think the reputation of the witness for being a violent, quarrelsome, and dangerous character, and not easily frightened or intimidated, was material to any issue.

We think the court sufficiently charged on accomplice's testimony, and hence there was no necessity of giving the special charge requested by appellant.

Appellant requested the court to charge on alibi. The judge, in approving the bill presenting this matter, insists that the issue of alibi is not raised by the evidence. Appellant testified to a state of facts showing clearly, if true, that he was not at the place where the homicide is alleged to have been committed. This being the case, we think the issue of alibi is raised. We held in Wilson v. State, ante, p. 115, that the charge on alibi should be given where defendant swears that he was at another place at the time of the alleged crime. We do not understand it is necessary for the defendant, or any witness testifying for appellant, to swear in so many words that he was at another and different place than that of the homicide, in order to raise the issue of alibi. But, if the evidence shows that he was at another or different place from the scene of the homicide, then the issue of alibi is raised, regardless of how the statement is made. It is the province of the jury to pass upon the sufficiency and truthfulness of the defenses urged by appellant. It is the province of the court to charge, under the statute, all the law applicable to the facts. We do not think this was done in this instance. Smith v. State (Texas Crim. App.), 49 S. W. Rep., 583; Smith v. State (Texas Crim. App.), 50 S. W. Rep., 362. In so far as the case of Byas v. State, ante, p. 51, indicates a converse holding to the above, the same to that extent is hereby overruled. However, an inspection of this case shows a different state of facts from that case. In that case the court requested appellant, if he desired a charge on alibi, to write out the same, and it would be given, but appellant refused to do so. In this case, however, appellant tendered a special charge, and excepted to the failure of the court to give a charge on alibi.

Appellant requested the following charge: "You are further instructed that to support a capital offense more is demanded by law than a strong suspicion or strong probabilities of the guilt of the accused. The evidence must, to a moral certainty, lead to the conclusion of his guilt beyond every other reasonable hypothesis, before you can convict defendant." We do not think the court erred in refusing to give this charge. His next complaint is with reference to the refusal of the court to charge on the voluntary recent use of ardent spirits as contained in his special charge. The charge, as far as applicable, was given in the main charge of the court. He complains because the court charged on murder in the first degree, because, as he contends, the evidence does not raise that issue. We think that the evidence does raise that issue. He contends that the charge of the court was not signed by the judge, but an inspection of the charge itself shows it is properly signed. Complaint is made of the verdict of the jury, finding defendant guilty of murder in the second degree "as charged in the indictment;" contending that no such degree of murder is charged in the indictment. The indictment charges murder, and this includes murder in the second degree, and the fact that the jury wrote their verdict as they did would not affect the same. For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*