### WILL BECKHAM v. THE STATE.

No. 3535.    Decided May 5, 1915.

**1.—Murder—Evidence—Dying Declarations—Signature.**

It is not necessary that a dying declaration which has been reduced to writing should be signed by the deceased, for even oral evidence is admissible when the statement had not been reduced to writing. Following Black v. State, 1 Texas Crim. App., 368, and other cases.

**2.—Same—Predicate—Dying Declarations.**

Where the questions asked the deceased were not calculated to lead him to make any particular statement, and a sufficient predicate was otherwise laid to admit the dying declarations, there was no error; besides, the dying declarations were amply corroborated.

**3.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the evidence did not raise the issue of manslaughter, there was no error in the court's failure to charge thereon.

**4.—Same—Suspension of Sentence.**

Upon trial of murder, there was no error in the court's failure to submit the question as to suspension of sentence.

Appeal from the District Court of San Augustine. Tried below before the Hon. A. E. Davis.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of dying declarations: Morgan v. State, 54 Texas Crim. Rep., 542; Thomas v. State, 49 id., 633; Connell v. State, 46 id., 259; King v. State, 34 id., 228; Hunnicutt v. State, 18 Texas Crim. App., 498; Hunnicutt v. State, 20 id., 632; Cook v. State, 22 id., 511; Douglas v. State, 58 Texas Crim. Rep., 122, 124 S. W. Rep., 933.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at five years confinement in the penitentiary.

The first contention is that the court erred in permitting the alleged dying declarations of deceased to be introduced in evidence. The record on this matter is as follows: Dan Walker testified: "This is a statement written up there where Matt Roberts was, by Dr. Kavanaugh, about 4 o'clock on Sunday morning and read to Matt and signed by Dr. Kavanaugh and myself as witnesses, and is supposed to be the dying statement of Matt Roberts. I was present when he made that statement and witnessed this statement. The doctor told him that he thought he would die. When the physician told him that he thought he would die, Matt Roberts said, 'Well, I think so, too, but I want you to do all you can for me.' He just said to him that he didn't want him to quit trying to save him. I think the doctor said, 'I don't think there is any chance for you to live.' And he agreed with the doctor, but wanted him to do all that he could. The doctor asked him if he wanted to make a statement, and told him that it would be used as a dying statement, and he said that he wanted to make a statement. The doctor asked him two questions. He asked him if he knew who shot him, and if the man that shot him knew who he was shooting, and the negro replied in the affirmative to both questions. The doctor asked him if he wanted to make a statement and he replied in the affirmative, and the doctor told him that he was in a dying condition. That was just about 4 o'clock. The negro knew what he was talking about; he was perfectly rational. Court: I am going to admit the statement. McDonald: We object to this because we don't think it was a deliberate act of the deceased, and that the State didn't confine itself to the rule in qualifying the statement; the negro didn't sign the statement at all.

"Witness: Dr. Kavanaugh wrote the statement out and I made the suggestion that the negro was too weak to sign it, and the doctor said, 'You and I will just sign it as witnesses.'

"McDonald: We object for the further reason that it is not signed at all. The court: All right, I will admit it. Defendant excepts. The State offers in evidence the dying statement of Matt Roberts, as follows: 'I had just taken Abe home—he was drunk,—and had come back to see about Clyde and had started him off, and had come back to get my hat, when he shot me. We had been drinking a little. We had never had a cross word. I was looking right at him when he shot me. Willie Beck shot me. He said, "You son of a bitch, don't you come back in here." ' "

It will be noticed that the first objection made is that the statement

was not signed by deceased. The court did not err in overruling such objection, for even oral evidence is admissible when the statement has not been reduced to writing. (Black v. State, 1 Texas Crim. App., 368; Roberts v. State, 5 Texas Crim. App., 141.) In the case of Krebs v. State, 8 Texas Crim. App., 1, it was held that where the dying declaration has been reduced to writing the loss of it must be shown before evidence of its contents is admissible, and in this case the statement having been reduced to writing, the written statement, and not oral evidence of its contents, should have been and was admitted. The statute does require that the statement be signed by the deceased. It is better that he sign it, but if too weak, as the evidence in this case shows, the fact he had not signed it would not render it inadmissible, if the evidence should show he in fact made the statement or declaration. There are only four requisites required by the statute: (1) That at the time of making the declaration he was conscious of approaching death and believed there was no hope of recovery; (2) that such declaration was voluntarily made, and not through persuasion of any person; (3) that such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement, and (4) that he was of sane mind at the time of making the declaration. Under the evidence in this case there can be no doubt of the sanity of the deceased. That the doctor asked him two questions: if he knew who shot him, and if the man who shot him knew who he was shooting, would not render the declaration inadmissible. The questions nor neither of them were calculated to lead him to make any particular statement. (Brande v. State, 45 S. W. Rep., 17; Taylor v. State, 38 Texas Crim. Rep., 552; Hunnicutt v. State, 18 Texas Crim. App., 498.) The only serious question is, does the evidence manifest that deceased knew he was in a dying condition? Specific objection on that ground seems not to have been made in the trial court, unless it be embraced in the general objection, "that the State didn't confine itself to the rule in qualifying the statement." This, taken in its broadest sense, might embrace each requisite of the statute. The witness testified that the doctor told deceased he thought he would die, when deceased replied, "I think so, too, but I want you to do all you can for me," the doctor replying, "I don't think there is any chance for you to live." Appellant's contention that deceased's language evidenced a lingering hope of recovery seems to have been held adversely to him by this court in the case of Hunnicutt v. State, 20 Texas Crim. App., 632. Anyway, in this case appellant himself testifies they had been friends. Several witnesses testify that deceased had come after his hat, and all the testimony corroborates the deceased in the statement he was looking at appellant when shot, and that appellant shot him.

The only exception made to the court's charge is that he erred in failing to submit the issue of manslaughter. Appellant prepared and submitted a special charge on that issue, and if the evidence raises the issue of manslaughter, the question is properly presented. We have carefully studied the record and we are of the opinion

that the evidence does not raise the issue. There were no ante-cedent menaces, quarrels or threats shown, and the circumstances occur-ring at the time are not of the character which under our statute would raise that issue. And the court not submitting the issue of man-slaughter, of course it was not necessary nor proper to submit to the jury the question of whether or not they would suspend the sentence, for the jury is not authorized to do so in a murder case.

The judgment is affirmed.

*Affirmed.*