L. E. Couch v. The State.

No. 6527. Decided November 29, 1922.

1.—Murder—Manslaughter—General Reputation—Dying Declaration—Rule Stated.

It is well settled in this State that where a dying declaration has been offered in evidence the same may be impeached by showing that deceased had made other statements inconsistent with such dying declaration. The general rule is that when the dying declaration is admitted in evidence it may be impeached in the same manner that the declarant could have been, had he been testifying in person, and it was reversible error to exclude the offered testimony in the instant case that deceased's general reputation for truth and veracity was bad.

2.—Same—Dying Declaration—Reduced to Writing.

Where defendant objected to the introduction of the dying declaration because the statement undertaken to be testified to by the witness was reduced to writing and that the writing itself was the best evidence; held, that this bill of exception does not present any error because of the failure to show that the statement was ever reduced to writing. Following Krebs v. State, 8 Texas Crim. Rep., and other cases.

3.—Same—Dying Declaration—Predicate.

Where objection was urged on the ground that no sufficient predicate was laid for the introduction of the dying declaration, but the record

showed that a sufficient predicate had been laid, there is no reversible error.

**4.—Same—Evidence—Res Gestae—Short-hand Rendering of Facts.**

Where, upon trial of murder and conviction of manslaughter, the court admitted in evidence the *res gestae* statement of deceased made a short time after the shooting in which he stated that defendant had shot him and that it was a cold-blooded murder, that defendant shot him down as if he were a dog, the same was admissible in evidence as a short-hand rendering of the facts and not the simple opinion of the deceased. Distinguishing Williams v. State, 51 S. W. Rep., 220, and other cases. Following Clark v. State, 56 Texas Crim. Rep., 293.

**5.—Same—Dying Declaration—Evidence Inadmissible.**

Where, upon trial of murder and conviction of manslaughter, the dying declaration testified to by the State's witness was practically the same in its substantial parts as the *res gestae* statement testified to by the other State witness, but the first State's witness was permitted to say over defendant's objection that deceased said, "If I die, tell my father I was killed in cold blood," the same was reversible error.

**6.—Same—Practice in Trial Court—District Attorney—Dying Declaration.**

Where defendant requested the court to retire the jury in order that he might examine the witnesses in the presence of the court and in the absence of the jury relative to *res gestae* statements and dying declaration; held, that these matters are left largely to the discretion of the trial court, and the bill of exceptions not showing error, the matter will not be considered reversible error, although the better practice is to retire the jury.

**7.—Same—General Reputation—Honesty—Fair Dealing.**

There was no error in the court's refusal to admit in evidence that the general reputation of deceased for honesty and fair dealing was bad, as this was not under investigation.

**8.—Same—Evidence—Circumstances.**

There was no error to admit in evidence that deceased had obtained a judgment against defendant, and that upon the very day of the homicide the defendant had made the last payment thereon.

**9.—Same—Moral Turpitude—Credibility of Defendant as a Witness—Practice in Trial Court.**

There was no reversible error in the court's refusal to act upon an ex parte motion of defendant not to permit the district attorney to inquire certain violations of the law by the defendant affecting his credibility before the jury but to hear these matters before the court, as he failed to tender himself as a witness and permit the State to interrogate him relative thereto. Following Oats v. State, 67 Tex. Crim. Rep., 488.

**10.—Same—Evidence—Carrying a Deadly Weapon—Conduct of Deceased.**

Where it was the theory of the defendant that deceased was armed with a certain small pistol at the time of the homicide and that this was removed by some party, he should have been permitted to show that a short time after the shooting, a search was made for this small pistol in deceased's room and was not found.

Appeal from the District Court of Palo Pinto. Tried below before the Honorable J. B. Keith.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

*J. W. Birdwell, Ritchie & Ranspot,* and *Penix, Miller, Perkins & Dean,* for appellant.—On question of impeaching dying declaration: Hamblin v. State, 30 S. W. Rep., 1075; Carter v. State, 191 Ala., 3; Lyles v. State, 142, S. W. Rep., 592; Strickland v. State, 5 id., 145, and cases cited in the opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was convicted of manslaughter growing out of the killing of F. E. Ederington, punishment being assessed at two years confinement in the penitentiary.

The evidence discloses that appellant and deceased some time before the homicide had some business transaction out of which had arisen an indebtedness in favor of deceased against appellant amounting to one thousand dollars. This indebtedness was reduced to judgment. Deceased was very bitter at appellant's failure to make payment, and made repeated threats that he would kill appellant if he did not pay what he owed. Many of these threats were communicated to appellant. Deceased appears not to have been satisfied with merely making the threats, but on one occasion at least directed the party to whom they were made to go tell appellant what he said. On the day of the homicide and a short time prior thereto appellant had made the last payment on the judgment which deceased held against him and this had been reported to deceased. When the parties met in the lobby of the hotel appellant called deceased, telling him that he desired to have a conversation with him. Appellant's wife was present then and testified that he told deceased he desired to have a "peaceable talk" with him. Deceased approached the cigar counter near which appellant was standing. All the evidence shows that he had his hand in his trousers pocket and that appellant requested him to remove it. The pivotal issue in the case, as we understand it, was the location of this hand at the time the shooting began. Some witnesses testified that deceased declined to take his hand out of his pocket and that it remained there until the shooting occurred. In the dying statement of deceased introduced in evidence he claimed that he took his hand out of his pocket upon being told to do so by appellant and placed his hand upon the cigar case, and was standing in that position when appellant slapped him with his left hand and immediately commenced to shoot him. Evidence was introduced by appellant showing that Ederington was a man of violent and dangerous character and one who likely would execute a threat when made.

The State introduced in evidence through the witness Robertson

a statement made by deceased. Many objections were urged to this evidence, some of which will be discussed later. In his qualification to one bill of exception relative to Robertson's testimony the trial judge says that he was of the opinion that under the circumstances this evidence was admissible both as *res gestae* and as a dying declaration. The State also introduced another statement of deceased through the witness Dr. McCracken. This statement seems to have been regarded and admitted by the trial court not in the nature of *res gestae* but as a dying declaration. Objections were urged to the admission of this testimony also, which will be later discussed. After the two declarations in question had been admitted at the instance of the State appellant offered to prove by a number of witnesses that the general reputation of deceased for truth and veracity was bad. Bills of exception numbers 3, 5 and 14 relate to this subject. It is well settled in this State that where a dying declaration has been offered in evidence, the same may be impeached by showing that deceased had made other statements inconsistent with such dying declaration. Felder v. State, 23 Texas Crim. App., 488, 5 S. W. Rep., 148; Lyles v. State, 64 Texas Crim. Rep., 621, 142 S. W. Rep., 592. (For collation of other authorities see Branch's Ann. P. C., page 1037, Section 1868). We are cited to no Texas case and have found none where is considered the right to impeach the dying declaration by proof that the general reputation of declarant for truth and veracity was bad. The general rule, however, seems to be well settled that when the dying declaration is admitted in evidence it may be impeached in the same manner that the declarant could have been had he been testifying in person. The rule is stated in Roscoe's Criminal Evidence, Volume 1, 8th Ed. at page 63, in these words:

"Dying declarations are, of course, open to direct contradiction in the same manner as any other part of the case for the prosecution; and as a prisoner is at liberty to show that a prosecutor who appears in court against him is not to be believed upon his oath, he seems to be equally at liberty to prove that the character of the deceased was such that no reliance is to be placed on his dying declarations." To the same effect is the rule stated by Mr. Wharton (10th Ed.), Vol. 1, page 580, Section 298; by Wigmore, Volume 2, Section 1446; 3d Russell on Crimes, (9th Ed.), page 271; 10th Volume Cyc., page 384. The texts are borne out by State v. Burt, 41 La. 787; Hall v. State, 124 Ga. 649; Robinson v. State, 10 Ga. App., 462; Lester v. State, 37 Fla., 382, the exact point now under consideration being considered in the latter case. The trial court was in error in excluding the offered testimony that deceased's general reputation for truth and veracity was bad. We do not desire to be understood as holding that where statements are propertly admitted as *"res gestae"* the character of the party giving utterance thereto may be impeached

by proof of his general reputation for truth and veracity, for it is well settled that, even though an injured party who makes declarations may be incompetent to testify, his *res gestae* statements are, notwithstanding, admissible. Branch's Ann. P. C., page 857, Section 88. But the statement of Dr. McCracken having been admitted before the jury as a dying declaration, and being so understood by them, then under the rules of law they were entitled to know what the character of declarant was in the respect inquired about.

Complaint is made by bill of exception number fifteen at the introduction of the dying declaration through the witness Dr. McCracken upon the ground that the statement undertaken to be testified to by the doctor was reduced to writing and that the writing itself was the best evidence. The doctor testified upon this point as follows:

"I heard a statement made by Mr. Ederington that was reduced to writing, I suppose it was being reduced to writing. I think it was being made to Mr. Barber."

Barber was not called to testify by either party. The bill does not present any error. It fails to show that the statement was ever reduced to writing, or if so, that it was completed or that it was executed by Ederington. The Krebs case, 8 Texas Crim. App., 1, seems to support the objection urged by appellant, but the bill fails to bring him within the rule stated, as follows:

"To have made the objection tenable, the defendant should have established that the declaration had in fact been reduced to writing, *and signed by the declarant;* in which event the parole evidence would have been inadmissible unless the prosecution had shown that it was not in the power of the State to produce the writing." Hunter v. State, 59 Texas Crim. Rep., 439, 129 S. W. Rep., 125; Drake v. State, 7 S. W. Rep., 868 are in consonance with the Krebs decision. We are not unmindful of the holding in Backham v. State, 76 Texas Crim. Rep., 520, to the effect that a written dying declaration may be admissible in evidence although not signed by deceased, providing it be shown that his failure to execute the same was because of weakness. We do not stop to discuss the soundness of the Beckham case, but merely call attention to the fact that the bill of exception in the instant case does not even bring it within the rule there stated, in that it fails to show that the written statement was complete and that deceased only failed to execute it because of being too weak to do so. We find no error on the part of the court in the respect complained of.

Objection is urged in several bills of exception to the statement of Dr. McCracken, on the ground that no sufficient predicate was laid for the introduction of the dying declaration through him in that it was not shown that declarant was conscious of approaching death. We do not discuss the testimony relative to this matter. With the

exception of one statement repeated by Dr. McCracken as coming from deceased we deem the evidence entirely sufficient to show a proper predicate. It was testified by Dr. McCracken that deceased said "*If I die,* tell my father I was killed in cold blood." If this expression indicated a doubt upon the declarant's part as to whether the wounds would prove fatal, perhaps the issue should have been submitted to the jury; but this point is not raised either by exception to the court's charge nor by special charge requested by appellant.

The State introduced through the witness Robertson the following *res gestae* statement of the deceased made a short time after the shooting.

"I immediately went to him and kneeled down over him; I said, 'Ed, it looks like you got the worst of it, who did it?' He said, 'Mr. Couch; it is cold blooded murder, Johnny, he shot me down as if I were a dog.' " In response to a question from the witness as to how it came about deceased replied:

"Well, myself and other parties came down from my room and as I came out of the elevator Mr. Couch was over near the cigar case and the counter of the hotel desk. He motioned to me and I went over. Mr. Couch stepped behind the cigar case. I walked up to the front of it. Mr. Couch stepped around to the east side of it and I stepped to the opposite side of it and Mr. Couch started the conversation and I told him, now Couch, I am satisfied, I got all that was coming to me and I am satisfied, and he said 'You are armed, take your hand out of your pocket.' I did, and put my hand up on the show case, and at that time he began to shoot, and shot me down as if I were a dog."

Appellant specially excepted to the statement, "It is cold-blooded murder, Johnny, he shot me down as if I were a dog," because it was a conclusion of deceased; not the statement of any fact, and invaded the province of the jury. As supporting his objection appellant relies upon the two Williams cases, 51 S. W. Rep., 220 and 224; Warren v. State, 9 Texas Crim. App., 629, and Bateson v. State, 46 Texas Crim. Rep., 34, 80 S. W. Rep., 88. In both the Williams cases the language objected to, and held inadmissible, was: "When they came in, I treated them perfectly gentlemanly. They added insult after insult." This was held not to come within the rule as being a shorthand rendering of the facts. We do not regard Warren's case as being in point. He said: "I was shot from up yonder." (meaning the side of the mountain). Thus far it was properly admitted, but without having seen who fired the shot, he was permitted to go further and say, "I known George Warren shot me, for he threatened me." It was purely an opinion; had no semblance of a shorthand rendering of the facts attending the shooting, but was a conclusion based upon previous trouble with Warren. It was properly held objectionable. In Bateson v. State, *supra,* the language

was: "They murdered me without cause." This was a dying
declaration and was held inadmissible, as being a matter of opinion.
It may be conceded that if the holding in Bateson's case is still the
law, appellant's objection is good. In Lockhart's case, 53 Texas
Crim. Rep., 589, the question was whether the *res gestae* statement
of deceased that accused "killed me for nothing" should have been ad-
mitted. It was contended that it was merely an expression of
opinion and not the statement of a fact. The majority of the court
held it to have been a shorthand rendering of the facts, and as to
such expressions, that has been the consistent holding of the court
down to as late as Finley v. State, (No. 7034, opinion June 7, 1922;
motion for rehearing overruled this present term). It is apparent
from a reading of the Lockhart opinion if. the court had concluded
that the words there complained of had been only the expression of
an opinion it would have been inadmissible although *res gestae*. In
Finley v. State, (*supra*) we held a statement by deceased "he shot
me in cold blood" admissible under the rule in the Lockhart case
(*supra*) and many others referred to in the Finley opinion. It
must be borne in mind that the rule as to the admissibility of *res
gestae* statements is not one alone for the benefit of the State, but
for the accused as well, which is exemplified in Clark v. State, 56
Texas Crim. Rep., 293. Clark was charged with killing White. He
offered to prove his *res gestae* statement that he "killed White in
self-defense." The State objected because "it expressed a conclusion
which involved both the law and the facts," and as such could not
have been testified to by declarant if a witness, which is practically
the same objection made; in the instant case by appellant. The
State's objection was sustained. Judge Ramsey, writing for the
court said:

"As we gather from the bill, the learned trial court seems to have
rested his action in excluding the particular portion of the testimony
ruled out upon the ground that it was a conclusion, and not a state-
ment of the facts. That the declaration was somewhat in the form of
a conclusion is undeniable. As to whether in any case one has
acted in self-defense, or kills another in self-defense, may be a mixed
question of law and fact, and yet it seems clear that, where one in
agony or excitement makes the declaration that he had shot another
in self-defense, it is, after all, something more than a conclusion, and
is equivalent to the affirmation that he had shot his assailant in
protection of his own person or his own life. It is a shorthand
rendering of the facts, and is consistent alone, and embraces the
statement that the act was done not in aggression, but for the pur-
pose of warding off or preventing injury or death."

At this point he cited many authorities in support of the announce-
ment just made, one of which is Lockhart's case, (*supra*) in which
Judge Davidson had expressed his dissent, but who agreed to the

3—93 T. C. R.

opinion in the Clark case without disapproval. In concluding his treatment of the subject Judge Ramsey says: "We think the rule laid down in Bateson v. State, 46 Texas Crim. Rep., 34, and other cases on which the trial court acted, is not correct." Craft v. State, 57 Texas Crim. Rep., 261, the opinion being written by Judge Davidson, approves Clark v. State, (*supra*), in this language: "The Clark case reviews the authorities upon which appellant relies for a reversal on this question and overrules them." The Clark case has been cited many times with approval, althrough the language under consideration in particular cases has been held not to come within the rule, "that expressions constituting a shorthand rendition of the facts are admissible though they bear the appearance of a mere opinion." McDougel v. State, 81 Texas Crim. Rep., 179. Neither the deceased nor accused when laboring under such pain or excitement as will admit their statements as *res gestae* make choice of words which otherwise might be selected with more care. The question always is, can they with reasonable certainty be said to express facts although bearing the semblance of opinion? Reverting to the language complained of in the instant case: "It is cold blooded murder, he shot me down like a dog." It would be manifestly unfair to the State to attribute to the language the legal meaning of "murder in cold blood," as it would have been equally unjust to the defendant in the Clark case (*supra*) to have excluded his expression "I shot him in self-defense," because it embraces a legal phase. The whole expression "It is cold blooded murder, he shot me down like a dog," when given an ordinary and sensible construction was no more than an equivalent for "he shot me for nothing, or without cause" or "I was doing nothing that caused him to shoot me." etc. The expressions complained of might have well been omitted by the State and the question raised thereby avoided, as the other portion of the statement seems entirely unobjectionable and very full. But we cannot bring ourselves to draw a distinction between the instant case and Clark v. State, (*supra*). The reasoning in the Clark case applies equally to this. In the one it worked to the interest of the defendant, in this to that of the State. The principle is the same in both.

The dying declaration testified to by Dr. McCracken was practically the same in its substantial parts as the *res gestae* statement testified to by the witness Robertson; but Dr. McCracken was permitted to say over appellant's objection that deceased said, "If I die tell my father I was killed in cold blood." The general rule relative to admission of dying declarations is tersely stated by Mr. Branch in his Ann. P. C. at page 1036, as follows:

"Nothing is admissible in a dying declaration that would not be admissible were the declarant sworn as a witness."

This rule is supported by the text writers and also by the cases collated by Mr. Branch under the foregoing notation. An exam-

ination of the authorities in this State, we think, will disclose that the rule has been adhered to, and any apparent exception thereto has been where a part of the dying declaration which, in a sense might be an expression of opinion, has been construed by this court to be a shorthand rendering of the facts. The application of this simple rule would save many questions of this character coming before the court. It would hardly be contended by the State if Ederington had recovered and had been testifying himself as a witness that it would have been permissible for him to say that at a time when he thought there was no hope for his recovery he had told Dr. McCracken that if he died to tell his father he was killed in cold blood. The very application of the rule in the instant case shows the error committed in the admission of the statement objected to. We know of no rule of law which would have permitted the State to have introduced this testimony. Of course, if it was an issue of fact whether Ederington believed he was going to die, and appellant had contended that the expression in the statement, *"If I die, etc.,"* bore upon that issue, the appellant would have had a right to elicit the testimony, but not the State.

When witnesses were proffered by the State to prove the *res gestae* statement, and to lay a predicate for and prove the dying declarations of deceased, appellant requested the court to retire the jury in order that he might examine the witnesses in the presence of the court and in the absence of the jury relative to these matters. Exception was taken to the refusal of such request. These are matters left so largely to the discretion of the court that we would not be willing to hold that the bill of exception presenting that matter shows an error for which the case should be reversed, but we commend to the trial courts as much the better practice to retire the jury for a preliminary investigation of such matters. It is not infrequently the case that many things are embraced in a *res gestae* statement as well as in a dying declaration which are not admissible. The witness cannot know what part is legally admissible and what is not and such preliminary examination would enable the court to advise the witness as to what part should be omitted in his statement to the jury. If an issue of fact should arise as to a proper predicate for a dying declaration and it should become necessary for the jury to pass upon the same of course all of the facts and circumstances incident to and surrounding the making of the declaration would of necessity have to go to the jury in order that they might pass upon the question intelligently. But the objectionable features, if any, in the statement, could be eliminated by the practice suggested.

Appellant tendered witnesses to prove that the general reputation of deceased for honesty and fair dealing was bad, and complains because the court refused to let such testimony be introduced.

Deceased's character as to honesty and fair dealing was not a matter for investigation in this prosecution.

Deceased had obtained a judgment against appellant. Upon the very day of the homicide he had made the last payment thereon. Complaint is urged because the State was permitted to make proof of such payment. We find no error in this. The witness who received the payment had reported the matter to deceased and had paid the money over to him.

Appellant filed a motion in which he stated that he expected to go upon the stand as a witness in his own behalf; that during 1902, he had a difficulty with a negro in which, acting in his own self-defense he had wounded him, but that he had never been indicted or prosecuted therefor; that in 1908 in Arizona he was convicted of robbery and served three years in the penitentiary and was paroled in 1911 and had been thereafter granted a full pardon and since that time he had lived a law-abiding life. He averred that the transactions set out were too remote to permit the State to inquire into them as affecting his credibility, and requested the court to instruct the district attorney not to interrogate him with reference thereto. The court declined to act upon the motion, stating that it was not a proper way to raise the issue. Appellant's bill of exception states that on account of the court declining to pass upon the question he had not taken the stand in his own behalf. The bill as presented shows no error on the part of the court in refusing to act upon an *ex parte* motion of appellant. The State could not be bound by the matters stated in the motion without an opportunity to make inquiry relative thereto. Appellant was never tendered as a witness. If he desired to bring himself within the rule stated in Bullington v. State, 78 Texas Crim. Rep., 187, 180 S. W. Rep., 679, he should have requested the court to retire the jury and tendered himself as a witness in his own behalf and permitted the State to interrogate him relative to the matters set up in his motion. If it then transpired that the matters were too remote as touching his credibility, and the State had no way of showing a continued course of crime subsequent thereto (Oats v. State, 67 Texas Crim. Rep., 488, 149 S. W. 1194) it would have been proper for the court to have directed the district attorney to refrain from inquiring about the matter. If the trouble with the negro never resulted in a legal charge against appellant it would have been improper for the State to have inquired about it.

Appellant offered to prove that a short time after the shooting decreased's room was searched and a small-caliber pistol which he owned was not found. Upon objection this testimony was excluded. This proffered evidence will have to be considered in relation to the other facts in the case. It was shown that deceased had two pistols, one of large caliber and one small caliber, and usually, or

a greater part of the time, went armed.  Appellant's wife, who was in the lobby of the hotel at the time of the shooting, had testified that deceased had his hand in his trousers pocket and that appellant had requested him to take his hand out several times and that he still retained his hand in his pocket at the time the shooting occurred; that immediately after the last shot was fired and after deceased had fallen some one rushed into the hotel, went to deceased and took something out of his hand and immediately left.  It was the theory of appellant that deceased was armed with the small pistol at the time; that it was removed from his body by this party.  He offered to show by the rejected testimony that a short time after the shooting a search of the room revealed the large pistol belonging to deceased, but that the small pistol was not in the room.  It is claimed that this would have been a circumstance tending to support appellant's contention that deceased was armed with the small pistol at the time of the shooting, and support appellant's theory that some one had removed the pistol from the body.  The rejected testimony may not have been of great probative force but under all the facts and circumstances of this case we believe the court should have admitted it.

Many other questions are presented but they will hardly arise upon another trial, at least in the same form, and a discussion of them is pretermitted.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*