Gilbert LEAL, Appellant,

v.

The STATE of Texas, Appellee.

No. 59568.

Court of Criminal Appeals of Texas, En Banc.

April 29, 1981.

Donald J. Mach, San Antonio, (Court-appointed), for appellant.

Alger H. Kendall, Jr., Dist. Atty., Karnes City, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

Our panel opinion on original submission affirming this conviction for delivery of

heroin [1] is withdrawn and the following is substituted in lieu thereof.

On rehearing the appellant urges that we reconsider his contentions that the State was improperly permitted to impeach a non-present, non-testifying individual, J. L. Heffnarn, by showing that Heffnarn's general reputation for truth and veracity and general reputation for being a peaceful and law-abiding citizen were both had. Heffnarn was supposedly the maker of certain business work records which were introduced by the appellant in support of his defense of alibi. On original submission it was held proper to impeach the non-testifying Heffnarn as to his reputation for truth and veracity, but error to have impeached him as to his reputation for being a peaceful and law-abiding citizen. In affirming the conviction, the panel held that this error, however, was harmless error. We agree that appellant's contentions should be reviewed.

To set the stage a recitation of some of the factual background is necessary. Raul Sanchez, undercover agent for the city of Pleasanton Police Department, testified that on March 26, 1977 he had been working in that capacity for about three weeks. He related that two or three days before March 26, 1977 he had gone to a house at Live Oak and Franklin in company with a "George," [2] who told him upon arrival to honk the horn of the car. He testified the appellant came to the car and told them he was out of heroin that day. Sanchez observed a motorcycle in the yard.

Sanchez stated that on March 26, 1977 he was driving on Live Oak Street and saw appellant on a black motorcycle with a white helmet pull into the driveway of the house at Franklin and Live Oak. According to Sanchez, appellant was wearing a sleeveless blue jean jacket. Sanchez honked his horn, and the appellant waved to him to stop, and when he did, inquired if Sanchez still wanted to buy some heroin. Sanchez

then purchased a half of gram of heroin for $15.00 from the appellant and noted the time was 3:05 p. m.

The chain of custody was established, and the chemist testified the substance was heroin.

The defense offered testimony that appellant did not own a motorcycle on the date in question, but purchased a red one on April 1, 1977, and that at the same time obtained a red and orange helmet. A tax collector's receipt for a title application dated April 4, 1977 was introduced. Lucy Wendt, wife of Dr. Wendt, testified they sold the motorcycle to appellant on April 1, 1977, and that he did not have possession of the same until that day. Evidence was also offered that appellant did not have a sleeveless blue jean jacket.

Appellant, on probation for burglary of a habitation, denied that he sold heroin to Sanchez on March 26, 1977. He testified that in the latter part of March, 1977 he worked on an oil rig in South Texas in the Falfurrias area; that it normally took 12 to 13 days "to finish a hole"; that he worked on the second crew from 7 a. m. to 3 p. m. each day, seven days a week, and stayed in a motel in Falfurrias, which was about a 30 minute drive from the drilling site; that it was about a two hour drive to Pleasanton from the drilling site. He testified he was working on the drilling rig on March 26, 1977. He stated that Stanley Kubish was the foreman or toolpusher and that Jimmie Heffnarn was the driller in charge of his shift.

Stanley Kubish testified that in March, 1977 he was overseer or toolpusher on project 14–3 for the Martin Drilling Company of San Antonio in South Texas, which drilling site he believed to be in Duval County. He related that there were three crews which worked 24 hours a day. He identified appellant as one of his workers. He stated he was on the job site almost

1. After a verdict of guilty, the court assessed punishment at 23 years' imprisonment.

2. On cross-examination following recall by the State Sanchez testified that his written report

showed he was with Robert Garcia at the time and he had been mistaken when he testified his companion was "George."

constantly and that the crews stayed in motels in Falfurrias and did not commute to Pleasanton about 110 miles away. He stated business work records were kept and that it was the driller's responsibility to log in the hours worked by each man on the crew. He stated he had personal knowledge of "almost all of what was put on there." He stated he approved the work records and that the original and one copy was sent to the drilling company office in San Antonio and that he kept one copy. He acknowledged that the handwriting on the business work records on defendant's exhibits concerning March 24th, 25th, 26th and 27th seems to be different, indicating several persons made the entries. He admitted some appeared to be in his handwriting, and that the workers often checked to see if their names were on the record, and that it was not irregular for a crew member to fill in the names of co-workers, and in fact this was a common occurrence. He stated the driller on each crew was, however, responsible for making the entries and having them ready for his approval prior to being sent to the drilling company. The records were introduced into evidence showing that on March 26, 1977 the appellant worked the 7 a. m. to 3 p. m. shift for a total of eight hours.

Over objection that J. L. Heffnarn, driller on the 7 a. m. to 3 p. m. shift, was not present and had not testified as a witness and was not subject to impeachment under the circumstances and testimony in the case, the court permitted the State to elicit from Kubish in the presence of the jury that Heffnarn's general reputation in the community in which he resided for truth and veracity was "probably not good" and that Heffnarn's general reputation in the community in which he resided was "probably a bad reputation."

In Hirschberg v. State, 117 Tex.Cr.R. 504, 35 S.W.2d 430 (1930), a robbery by assault case, it was held that the defendant should have been allowed to show that a deceased witness, whose testimony from a former trial of the same cause identifying the defendant as the robber was reproduced and admitted into evidence, had a bad reputation for truth and veracity. In Couch v. State, 93 Tex.Cr.R. 27, 245 S.W. 692 (1922), it was held that a dying declaration when admitted in evidence, may be impeached in the same manner that the declarant could have been had he been testifying in person, and that it was error to exclude offered testimony that deceased's general reputation for truth and veracity was bad.

■ It is argued that the business work records admitted under Article 3737e, V.A. C.S., as an exception to the hearsay rule were testimonial in nature and it is proper to subject them, when admitted, to impeachment in the appropriate ways. The State argues that Kubish held Heffnarn responsible for making entries as the hours worked by his crew prior to his (Kubish's) approval, and Heffnarn was therefore subject to impeachment as the maker of the records even though he was not a witness. The difficulty here is that whatever validity the argument may have in normal business records cases the evidence here shows that despite the fact Kubish held driller Heffnarn responsible the entries on the records introduced were in the handwriting of several different persons. Kubish identified some of the entries as apparently being in his handwriting and acknowledged that it was a common occurrence for various crew members to make entries. There was no showing that the entry on such records to the effect that the appellant had worked eight hours on March 26, 1977 from 7 a. m. to 3 p. m. was made by Heffnarn and was in his handwriting. In fact, it was not shown that any portion of the records introduced were actually made by Heffnarn. The facts of the instant case are distinguishable from Couch and Hirschberg. We conclude that under the particular facts and circumstances the court erred in permitting the non-witness Heffnarn to be impeached by showing his reputation for truth and veracity was bad.

Even if it can be said the above discussed impeachment testimony was proper, it was error to have admitted testimony that Heffnarn's reputation for being a peaceful and

law-abiding citizen was bad. This would not have been proper impeachment even if Heffnarn had been a witness.[3] In *Shannon v. State*, 567 S.W.2d 510, 515 (Tex.Cr.App. 1978), this court wrote:

"In the impeachment of a witness, the inquiry should be confined to his general reputation for truth and should not extend to his general moral character. *Belt v. State*, 47 Tex.Cr.R. 82, 78 S.W. 933 (1904). The trial court properly ruled that testimony as to Evans' reputation for truth and veracity was admissible, but that testimony as to his general reputation for being peaceful and law-abiding was not admissible. *Padron v. State*, 41 Tex.Cr.R. 548, 55 S.W. 827 (1900). See 1 McCormick and Ray, Texas Evidence, Secs. 645–647 (2d ed. 1956); McCormick, Evidence, Sec. 44 (2d ed. 1972); Fed.R. Evid. rule 608." See and cf. *Bell v. State*, 433 S.W.2d 443 (Tex.Cr.App.1968).

■ The defense was alibi, and the business work records were introduced in support thereof. The errors in the admission of testimony concerning the reputation of the non-witness Heffnarn as to his truth and veracity and as to being a peaceful and law-abiding citizen were not harmless as such testimony was inadmissible and prejudicial.[4]

For the reasons stated, the judgment of affirmance is set aside, the appellant's motion for rehearing is granted, and the judgment is reversed and remanded.

---

3. If Heffnarn had been a witness he could have been impeached by proof by any prior felony convictions or other convictions for offenses involving moral turpitude.

4. It is noted that the prosecutor in jury argument urged that the business records should not be considered as Heffnarn's reputation for truth and veracity and for being a peaceful and law-abiding citizen was bad.