## PAUL THOMPSON v. THE STATE.

No. 2873.   Decided April 19, 1905.

**1.—Carrying a Pistol—Fact Case.**

Where defendant had a pistol in his wagon going to town, where he provoked a difficulty with a man who then attempted to climb on the wagon and strike him with his empty fists, when defendant knocked him off his wagon wheel, whereupon defendant's team took fright and carried him some one hundred and fifty feet from his assailant, when he got out of his wagon with his pistol in his hand, carrying it because he supposed he was being followed by his assailant, but when he saw the latter was not pursuing him, put the pistol back into the wagon, he was guilty of unlawfully carrying a pistol about his person from the time he took it out of the wagon, until he placed it back.

**2.—Same—Special Judge.**

The members of the bar may elect a special county judge when the regular judge does not appear at the time appointed to hold court. Following Porter v. State, 48 Texas Crim. Rep., 125.

Appeal from the County Court of Milan. Tried below before Hon. R. B. Pool.

Appeal from a conviction of unlawfully carrying about his person a pistol; penalty, a fine of $25.

The opinion states the case.

No brief for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of carrying a pistol. There is some criticism in regard to the authority of the county judge to act in the case, on account of the manner of his selection, he being a special judge elected by the bar to preside in the absence of the county judge. This question was thoroughly discussed in Ben Porter v. State, decided at present term. It is not necessary to enter into a further discussion of that question.

The only remaining question is the sufficiency of the evidence to justify the conviction. There is no question of the fact that appellant had the pistol; that he lived about six miles in the country from the town of Cameron, and came to town on the day that he was seen with the pistol, bringing it in his wagon. He placed it in the wagon about half way between the seat upon which he was riding and the rear end of the wagon on some cotton, which he was bringing to town to have ginned. Passing down the street he reached the lumber yard, where he was indebted, stopped, and called for the owner in order to settle his account. The owner came out and a dispute arose as to the amount; there being a difference of about one dollar in his favor as he claimed against the account claimed by the lumber dealer. The dealer walked back into the house to investigate his books in regard to the accuracy of the account, came back and informed appellant he was right about it. Appellant called him a damn liar, whereupon the lumber man undertok to climb into appellant's wagon, with the view of engaging in a personal difficulty. When the lumber man stepped upon the wagon wheel appellant kicked or knocked him off; the horses started to run, and appellant lost control of them—the lines having dropped from the dashboard in front beyond his reach. After they had run down the street one hundred and fifty feet or such matter, appellant got out of the wagon, while the horses ran on, and brought the pistol with him. His antagonist had not followed him. Appellant says he thought his antagonist was following him, or would follow him. This placed the distance between them fifty yards or such a matter. Appellant testified at this point: "When I got out I saw that Mr. Zavisch was not pursuing me, but was standing in his door: I did not return towards

Mr. Zavisch, and did not intend to do so. When I got out of the wagon and took my pistol in hand, I proceeded at once to follow my team, which some one had stopped in front of the Brown Hotel, a half block from where I got out of the wagon. When I reached the wagon I again put the pistol away in the wagon." So far as the testimony goes we have the pistol in appellant's hand from the time he was getting out of the wagon until he overtook his team and placed the pistol back in the wagon. Up to that time, under the authority of Cathey v. State, 23 Texas Crim. App., 492, appellant had not carried on and about his person a pistol. The facts in the cited case are very similar to those in this case up to the time appellant left his wagon. If the conviction is correct, it must be based then upon the fact that appellant had the pistol when he got out of the wagon, after the difficulty was ended, and carried it from that time until he regained his wagon and put it away. There was no danger pressing him at this point. Zavisch was not following him. Nor would it seem from the beginning of the difficulty that appellant had the right to have used the pistol in self-defense strictly speaking, because apparently he provoked the occasion of the trouble by calling Zavisch a damn liar in disputing the honesty of the account. In order to authorize the carrying of a pistol on his person under this statute, the danger must be so imminent and threatening as not to admit of the arrest of the party about to make such attack upon legal process. He was in no danger of an attack at the time; his opponent had shown no evidence of making an attack upon him further than his hands and fists, and this had been brought about by appellant cursing him and pronouncing him a liar. In other words this statute seems to contemplate that, in order to justify or excuse a man from having a pistol on and about his person to resist in regard to imminent and pressing danger, it must be upon the theory that he has been unlawfully attacked, and his having the pistol would be excused because of his right to use it in self-defense. At the time he took the pistol and got out of the wagon, he was not in any danger from Zavisch; the parties had separated; his team had carried him one hundred and fifty feet under his own version of the matter, from his antagonist. So we do not believe that he has brought himself within the terms of the statute justifying him in carrying the pistol in the manner the facts show he did. We are of opinion that the evidence was sufficient to justify the court in adjudging appellant guilty. The judgment is affirmed.

*Affirmed.*