### DAN McQUEEN v. THE STATE.

#### No. 3555. Decided May 19, 1915.

#### Rehearing denied June 9, 1915.

**Carrying Pistol—Insufficiency of the Evidence—Own Premises—Intent.**

Where, upon trial of unlawfully carrying a pistol, the evidence showed that the defendant carried the alleged pistol from his residence to his place of business, and also showed that he carried the same under circumstances which would not be unlawful and showed no intent to violate the law, these matters should have been submitted to the jury, and a refusal to do so as requested was reversible error.

Appeal from the County Court of Coleman. Tried below before the Hon. W. M. Weatherred.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Strong & Ragsdale* and *Woodward & Baker,* for appellant.

*C. C. McDonald,* Assistant Attorney General, and *Garland Woorward,* County Attorney, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of carrying a pistol in violation of the law.

It is unnecessary to go into a detailed statement of the facts. It is sufficient, we think, for the disposition of this case to state that prior to the time appellant had the pistol, at the instance of a friend he took another party to his house who had been up the previous night and complained of want of sleep. He went with the party to his residence and placed the party in a room where he could get the required rest. The party had a grip in which was some whisky, from which he got a bottle and they all took a drink. Appellant went back to the store. Later he returned to his house on account of some disturbance by another party who was at his house. This was some two or three hours after the first visit to his house. They then took another drink, and appellant asked the party who was creating the disturbance to leave, that a female relative was sick in an adjoining room and he did not want her disturbed. The party insisted on going into the room to see the lady, and became a little obstreperous, when appellant got an iron, which seems to have been a smoothing-iron, weighing six or seven pounds, and went to where they were and demanded that they leave his place. He and the party went upon the gallery, each one holding to the iron as they went out, and when upon the gallery the other party jerked the smoothing-iron from appellant and struck him on the back of the head near the base of the brain and knocked him down. Appellant immediately went to his store, a short distance away, and got his pistol and said he was coming back and make them leave his premises. As he started back he was intercepted, and a statement was made to him that a Mr. Brown wanted to see him. He went then to the front of the store or on the sidewalk just out of the store with the pistol in his hand; they took him across the street to a bank. There is some evidence going to show he was waving his pistol and cursing the parties at the house. The State's contention was that appellant was drunk. It seems from the testimony that he had taken two drinks something like two or three hours apart, and much of the testimony indicates he was not drunk, and that he was in a dazed mental condition by reason of the blow on the back of his head with this smoothing-iron, the weight of which was shown to have been six or seven pounds, and there was evidence that he was in a dazed and unconscious condition to the extent that he did not know what occurred in the meantime until after 5 o'clock in the evening. This, we think, is a sufficient general statement of the case to bring in review the questions suggested for revision.

The court charged the jury that if appellant had a reasonable ground for fearing an unlawful attack upon his person, or upon his family, and that the danger was so imminent and threatening as not to admit of the arrest of the person about to make such attack, upon legal process, then he would not be guilty, leaving it to the jury to find from the evidence whether the fear of such an unlawful attack was reasonable and whether the danger was imminent and threatening as not to admit of the arrest of the party about to make the attack, upon legal process.

He also charged if by reason of the blow struck on the head his reason was dethroned so as to render him unconscious and irresponsible, and that while in that condition he had the pistol, he would not be guilty. Appellant asked charges the substance of which was, that appellant had a right to expel the offending party, whose name was Bledsoe, from his residence, using all necessary force to accomplish that purpose, and that he had a right to go to his store and get his pistol and go back to his house and compel the party to leave, and that if in going back with the pistol he had a reasonable apprehension of his life or serious bodily injury, then he would have a right to go to his store and get his pistol as a means of protecting himself in forcing the offending party to leave his house. This charge ought to have been given. The pistol was at the store; the offending party was in his, appellant's residence, and appellant had sought to make him leave, and obtained a smoothing-iron, but this was taken from him and he knocked down with it. He had a right to have his pistol at the house, and had a right to go to the store and get it and carry it to his house for any legitimate purpose, and especially under the circumstances of this case, to make Bledsoe leave the premises, and to use it in defense of himself in case Bledsoe should make another attack upon him. He also asked a charge to the effect that it was not a violation of the law for a man to have a pistol at his place of business or at his residence, either or both, and it was not a violation of the law to carry it from his residence to his place of business, or from his place of business to his residence, and if under the evidence defendant had gone from his home to the store and there secured the pistol in question, and had same on his person for the purpose of returning to his residence, and had started to his residence, and was informed that one J. O. Brown desired to see him at the front of the store, and went on the street in front of his store with the view of seeing said Brown, and was there seen and found with the pistol in question, the carrying of the pistol under such circumstances would not be unlawful, and if from the evidence the jury so believed they should acquit him. This charge under the facts of this case should also have been given. A charge was also asked with reference to the intent in carrying the pistol. Under the authorities this charge should have been given. The jury should also have been instructed, as contended by appellant, that if he was carried across the street to a bank with the pistol in his hand by the parties who had charge of him, that his carrying the pistol from his store to that point would not be a violation of the law. It would have to be a voluntary act on his part in traveling about the streets with the pistol to make him responsible. The writer does not believe the State has sufficient evidence here to justify this conviction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied June 9, 1915.—Reporter.]