## Eugene Clark v. The State.

### No. 8881. Delivered Jan. 28, 1925.

No motion for rehearing filed.

**Manslaughter—Charge of Court—Special Charge—Erroneously Refused.**

A special charge was requested by the appellant, that it was his right, for his own protection, to arm himself, and go to the house of the deceased to request his personal property which had been taken from his home without his consent. This charge should have been given. The appellant had the right to return to the premises of the deceased, for the purpose of obtaining his property, and in doing so, it was his right to arm himself to the end that he might protect himself against aggression upon the part of the deceased. This is in accord with the rule long prevailing, and often applied in the state. Following Shannon v. State, 37 Tex. Crim. Rep., 5 and other cases cited.

Appeal from the District Court of Smith County. Tried below before the Hon. J. R. Warren, Judge.

Appeal from a conviction of murder; penalty, ninety-nine years in the penitentiary.

*Wm. M. Hanson,* of Tyler, for appellant.

*Tom Garrard;* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of ninety-nine years.

Appellant shot and killed his mother-in-law, Emma Ross.

The principal legal question arises on account of the refusal of the request of the appellant that the jury be instructed that it was his right, for his own protection, to arm himself and go to the house of the deceased to request his personal property which had been taken from his home without his consent.

Appellant was a negro about twenty-one years of age. He had been married to a young woman, the daughter of the deceased, about six months. A short time after the marriage, upon the suggestion of the deceased, they moved to her house. A separation took place and the appellant was ordered to leave by the deceased and to refrain from returning to her house. A reconciliation followed and the appellant and his wife took up their abode at the home of Will Davis. According to the appellant's testimony, on the day of the homicide, following his custom, he left home early in the morning, parting from his wife on friendly terms. Before noon his wife came to his place of work and told him she was going to leave him. Soon after, upon going to his home, he found that his wife and an express man were in the act of moving his household effects. He forbade this, and another reconciliation took place, his wife getting in the car and returning with appellant to the home of Will Davis. Upon reaching there, the deceased appeared and told her daughter that she had come to see why she had not returned. Appellant replied that they did not intend to do so. Appellant and his wife then parted, he went to his work, which was driving a delivery wagon for a grocery store, leaving his wife at home. Upon his return at the dinner hour he found his household his wife, who stated that the deceased had persuaded her to stay at her house. Appellant then said that he wanted his part of the effects removed. He went to the home of the deceased where he found "things;" that he would put them out in the street and would later come and get them. His wife objected to this and the deceased appeared upon the scene with a stick of wood in her hand with which she struck the appellant. A scuffle ensued between appellant and deceased, and she was about to hit him with the stick when his wife said to her: "Mama, don't hit him with the stick." Deceased, with an epithet, said: "I will kill him," and went into the room and procured a gun. The wife told her mother not to shoot. She repeated the statement that she would kill him. He took hold of the gun to wrest it from her possession. While the gun was pointed at him, she pulled the trigger but the gun did not fire. She then unbreached it and discovered that it was empty. She went for ammunition and the appellant fled to the home of Will Davis. He afterwards returned, bringing a gun with him. He testified that when he reached the house, the deceased came to the door with the gun in her hand. Just as she threw up the gun, he fired at the door. She then shut the door and locked up the house. Appellant retreated beyond the range of the gun, telling her, however, that if she would put his things out of the house, everything would be all right. She rejected this proposal, but finally told him to come in and get his things. On entering the house and seeing her at the door, he fired, thinking there was a ruse to kill him.

A witness for the State testified in substance that the deceased was attempting to comply with the appellant's request to put his property out of doors and that he shot her when she was unarmed.

99 Tex. Crim.—6.

There was other testimony with reference to the possession of the gun by the deceased at the time she was shot.

The eighth paragraph of the court's charge reads thus:

"If you should find beyond a reasonable doubt that the defendant left the premises of deceased for the purpose of arming himself with the specific intent to return and take the life of deceased, then if you shall further so find that he armed himself with a gun and returned to the premises of deceased and entered the house with said gun, and in pursuance of such previously formed design and intent, and with a calm and deliberate mind and with malice aforethought, as hereinbefore defined, he shot and killed the deceased, he would be guilty of murder, even though deceased may have made an assault upon him when he entered her premises, and in case you so find you will find him guilty of murder. If, however, the defendant with the purpose and intent to kill the deceased left her premises and so armed himself, but if after he returned to the premises he abandoned such intent and entered said premises for the purpose of removing or aiding in removing the piece of furniture in question, then his right of self-defense would not be cut off or abridged, and if after entering said premises the deceased by some act then done or by any conduct on her part caused it to reasonably appear to defendant, viewed from his standpoint, that he was in danger of death or serious bodily harm at the hands of the deceased, and so believing he shot and thereby killed deceased, or if you have a reasonable doubt thereof you will find him not guilty."

The issue of self-defense was submitted in paragraph 7, which concludes with the statement in substance that if the jury found the facts as detailed in the paragraph, they would find the defendant not guilty "unless they found the defendant guilty under paragraph 8 of the charge." Paragraph 8 is obviously a limitation or qualification of the right of self-defense. It is apparently in the nature of a charge on provoking the difficulty, though it is wanting in some of the necessary elements of such a charge. Having qualified the right of perfect self-defense by the charge mentioned, we think the court should not have declined to give the special charge or to amend the general charge so that the jury might understand that the appellant had the right to return to the premises of the deceased for the purpose of obtaining his property, and that in so doing it was his right to arm himself to the end that he might protect himself against aggression upon the part of the deceased. We understand this to be in accord with the rule long prevailing and often applied in this State, notably in Shannon v. State, 34 Texas Crim. Rep., 5, 60 Amer. St. Rep., 17; Melton v. State, 47 Texas Crim. Rep., 458; Roberson v. State, 203 S. W. Rep., 349; Moore v. State, 258 S. W. Rep., 476; Stanley v. State, 193 S. W. Rep., 151; Mason v. State, 90 Texas Crim. Rep., 560; Carlile v. State, 96 Texas Crim. Rep., 37.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*