## L. E. COUCH V. THE STATE.

No. 9340.   Delivered October 14, 1925.

Rehearing granted State December 23, 1925.

Rehearing denied appellant February 10, 1926.

### 1.—Manslaughter—Evidence—Reproducing Testimony—Rule Stated.

Under the statutes and decisions of this court the testimony of an absent witness cannot be reproduced on a subsequent trial unless the party offering to reproduce such testimony shall show that such witness is either dead or out of the state or beyond the jurisdiction of the court. Having failed to establish the predicate, there was no error in refusing to permit appellant to reproduce the testimony of the absent witness J. C. Hays, given on a former trial of the case.

### 2.—Same—Evidence—Properly Admitted.

Where the wife of the appellant had testified that she saw a man named Pascale go to the body of the deceased shortly after the shooting and stoop over the body, and take something out of his (deceased's) pockets and leave the room, there was no error in permitting the state to disprove this statement of appellant's wife, by the witness Pascale.

3.—Same—Charge of Court—Defensive Issues—Rule Stated.

Where, on a trial for culpable homicide, the court affirmatively submits the defensive issues raised by the evidence, care should be taken not to shift the burden of proof by the charge on the defendant. The burden is not on appellant to show justification for the killing, but the burden is on the state to show that the killing is unlawful, and if the evidence raises a reasonable doubt on this question, then the appellant should be acquitted.

4.—Same—Requested Charge—Appellant's Right to Arm Himself—Improperly Refused.

Where, on a trial for manslaughter, the testimony disclosed that deceased had threatened and abused appellant on numerous occasions, and the court having given a charge on provoking a difficulty, it was error to refuse appellant's requested charge to the effect that he had the legal right to arm himself and to seek a peaceable interview, and that he did not thereby forfeit his right of self-defense. Our authorities are uniform in the support of this rule. Following Frazier v. State, 272 S. W. 454.

5.—Same—Impeaching Defendant—Former Conviction—Too Remote.

Where a witness was permitted to testify that appellant had told him that he (appellant) had been convicted of high-jacking in Arizona in 1908, such testimony being offered in 1920 or 12 years after the purported conviction, was too remote, and it was error to admit such testimony.

ON REHEARING BY STATE

6.—Same—Charge of Court—Held, Correct.

On consideration of the state's motion for rehearing, we are constrained to hold that our criticism of the court's charge on manslaughter in our original opinion was an error. The charge could not fairly, in the light of analysis, be said to shift the burden of showing that he acted in self-defense upon the appellant.

7.—Same—Requested Charge—Covered by Charge Given—No Error.

In holding that the court erred in refusing to give appellant's requested charge No. 5, on the right of appellant to arm himself and seek the deceased to adjust in a peaceable way their difficulties, our attention is now called to the fact that appellant's requested charge No. 1, which was given, fully and fairly presented the same issue to the jury.

8.—Same—Impeaching Appellant—Remoteness of Conviction.

In our original opinion we held that the admission of evidence that appellant had been convicted of a felony in 1908, was too remote from the time of his trial in the instant case. On a more careful examination of the record we observe that in fact there was but a little more than 7 years between his former conviction, which was in 1912 instead of 1908, and the instant trial, which we do not consider so remote as to warrant the exclusion of the proof. Following Davis v. State, 52 Tex. Crim. Rep. 629; Scoville v. State, 77 S. W. 792; Richardson v. State, 91 Tex. Crim. Rep. 320.

9.—Same—Charge of Court—On Provoking Difficulty—Held, Correct.

The evidence in this case clearly raised the issue of provoking a difficulty. Having correctly presented this issue, as well as the converse of the proposition, no error is shown. Other contentions of appellant having all been passed on in our original opinion and opinion on rehearing by the state, the original opinion reversing the case is set aside and affirmance ordered, and appellant's motion for rehearing overruled.

Appeal from the District Court of Hood County. Tried below before the Hon. J. B. Keith, Judge.

Appeal from a conviction of manslaughter, penalty two years in the penitentiary.

This is a second appeal of this case. The first appeal will be found in 245 S. W. 692, where a sufficient statement of the facts is narrated.

*J. W. Birdeville, Ritchie & Ranspot, Penix, Miller & Perkins* of Mineral Wells, and *W. J. Oxford* of Stephenville, for appellant.

*Jos. .W. Hale, Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—Appellant was convicted in the District Court of Hood County for the offense of manslaughter and his punishment assessed at confinement in the penitentiary for a term of two years.

This is the second appeal of this case. The first appeal will be found in 245 S. W. 692, where a sufficient statement of the facts is narrated.

Appellant again complains at the action of the court in permitting the witness Roberson to testify to certain statements made by the deceased immediately after he was shot. Among them, one to the effect "he shot me down as if I was a dog, he murdered me in cold blood." Appellant concedes that this identical question was passed on in the former trial of the case but declares that he is not satisfied with the conclusion the court reached with reference thereto. The opinion on the former trial is the deliberate judgment of this court, and we have no doubt about the accuracy of the conclusion as stated.

Appellant also complains because the court refused to permit him to introduce the testimony of J. C. Hays given on a former trial of the case. The bill shows that the witness Hays had been summoned and was under process and that his where-

abouts was unknown and that appellant had not been able to get in touch with said witness and have him in attendance upon this trial, although he made all reasonable efforts to do so.  The record shows that the witness testified on the former trial of the case, but it utterly fails to bring this testimony within the rule which permits the reproduction of a witness' former testimony on a trial of a case, in that it fails to show that said witness is either dead or out of the state or beyond the jurisdiction of the trial court.  The authorities cited by appellant on this question are not in point as each of them relate to the reproduction of testimony where the party is either dead, out of the state or otherwise beyond the jurisdiction of the court.  There sems to us to be no semblance of reason why appellant should have been permitted to reproduce this testimony in this case.

Appellant complains at the court's action in permitting the district attorney to ask one Pascall the question:

"I will ask you whether or not you went up to Frank Edrington's body while it was lying on the floor of the lobby after he had been shot down by L. E. Couch and while Couch was present and stooped over his body and picked up anything from his person or out of his hand and ran out of the lobby in a stooped position?"

To which the witness replied in the negative.  The objection to this question is that it is leading and suggestive and highly prejudicial and because no predicate was laid therefor.  The bill of exceptions is qualified by the trial court with the explanation that Mrs. Couch, the wife of defendant, had testified that Pascall had gone to the body of deceased soon after he fell and had taken from his pocket something and left the lobby of the hotel.  The question was under the explanation of the court clearly admissible for the purpose of impeaching the wife of appellant.

If the photograph offered in this case should be offered on another trial evidence should first be offered identifying the same as correctly portraying the deceased at or near the time of the killing.

Complaint is also made with reference to the court's charge in submitting the issue of manslaughter to the jury. In submitting this issue the court gave the following charge:

"If therefore you believe from the evidence in this cause beyond a reasonable doubt that the defendant, L. E. Couch, in Palo Pinto County, Texas, and on or about the 4th day of August, 1920, did with a pistol shoot and kill F. E. Edrington, as

alleged in the indictment, and you further believe that the defendant had previous to the killing been informed that the deceased had threatened his life and believed such information to be true, whether it was in fact true or not, and you further believe beyond a reasonable doubt that at the time and place the defendant killed the deceased they met and that by reason of such information, if any, as to threats made by the deceased against the life of the defendant, taken in connection with all the other facts and circumstances in the case and in connection with the conduct and language, if any, of the deceased at the time of and just before the killing and previous to the killing, or if from all of the facts and circumstances in evidence in this case you find there was aroused in the mind of the defendant such a degree of anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection and in that condition of mind he shot and killed the deceased, and that he was not justified in so doing then you will find him guilty of manslaughter and assess his punishment at confinement in the penitentiary of this state for any term of years not less than two nor more than five in your discretion."

Appellant urged many obections to this charge. Without discussing this charge in detail it is difficult to say that we think it is misleading, involved and is not as clear and concise as it ought to be. We especially think that appellant's criticism of the same to the effect that it places a greater burden on him than is justified is sound. The burden is not on appellant to show justification for the killing, but the burden is on the state to show the killing is unlawful and if the evidence raises a reasonable doubt on this question, then the appellant should be acquitted. We are disposed to think that this rule was not followed in the above quoted charge, but we think a fair construction of the charge compels the conclusion that the jury was instructed to convict the appelant of manslaughter unless he was shown to be justified in the killing.

Appellant also complains at the court's action in refusing his special charge to the effect that the defendant had a right to arm himself and seek a peaceable interview with deceased and if he did so in a peaceable manner with no intention to provoke a difficulty with the deceased he would not forfeit his right of self-defense. The appellant's testimony shows many and various threats made against his life by the deceased. It also shows that deceased had on other occasions cursed and abused him in a most outrageous manner. It showed that the appellant was afraid of deceased and he testified that he carried

the pistol to protect his life from the deceased. The court gave a charge on provoking the difficulty and we think in view of this fact construed in connection with the appellant's testimony that the appellant's special charge instructing the jury that the fact that he armed himself and sought a peaceable interview did not forfeit his right of self-defense should have been given. In fact, we think the authorities are uniform to this effect. Frazier v. State, 272 S. W. 454.

Appellant complains at the court's action in permitting the witness Roberson to testify to the effect that the appellant told him that he had been convicted of hi-jacking in Arizona. The record shows that this conviction occurred in 1908, and the killing in this case occurred in 1920, or 12 years thereafter. The record further discloses that the various witnesses testified that the reputation of defendant in all lines had been good for a number of years. The court in qualifying this bill says that the statement as made by the appellant to the witness Roberson appeared to be an effort on the part of defendant to intimidate the witness Roberson. We do not agree with the trial court that even from Roberson's statement as to how the transaction took place that there is any suggestion in this record that the appellant was attempting to intimidate the said witness. It was admitted that Roberson was not an eye-witness to the actual shooting. His testimony is concerned almost wholly with statements made by deceased to him after the shooting occurred. This being true, the witness Roberson testified to the following conversation with the appellant:

"After this homicide Mr. Couch had a conversation with me with reference to my testimony—it was just outside of the district court room in the hallway in the court house at Palo Pinto. He stated that some one had told him that I was going to testify to certain facts in this case and that he wanted to know as to whether or not it was true and he stated some facts. The facts mentioned that I was going to testify that he had (Edrington) said that Couch murdered him in cold blood, and I told him I certainly was, that I felt it my duty as a citizen from what Mr. Edrington told me in his death blood that he murdered him in cold blood. And Mr. Couch said 'Do you think you can afford to testify to that?' and I says 'I sure can, I will testify to the truth anywhere, any time,' and I asked him what he meant, and he says, 'you know the obligation you took at one time,' and I said 'the Masonic obligation,' and he says 'yes', and I said, 'I never took any obligation to protect a man I thought was guilty of crime.' He detailed some other facts

that he thought I was going to testify about, it was about some trouble he got into in Arizona. He said he had been charged with hi-jacking, indicted and served a sentence. in the penitentiary for it. I don't recall that he told me any other facts that he understood I was going to testify to. He didn't say anything else about my testifying to it except that he didn't see how I could afford to testify to those facts."

On cross-examination he testified as follows:

"At this conversation at the court house Mr. Couch stated to me that he had been told that I was going to testify that he shot Edrington down like a dog and wanted to know if I thought I could afford to testify to anything of that kind and I told him I could testify to anything that was the truth—I asked him why and he says, 'you know the obligation you have taken?' and I said, 'what do you mean, the Masonic obligation?' and he said 'yes', and I said, 'I never took any obligation to protect a man in crime.' I told him then that I thought he murdered him in cold blood. I am a Mason. I have never been in lodge with him. My membership is at Haskell. I never attended at · Mineral Wells. Mr. Couch stated that he understood that I had been telling about this trouble in Arizona—I had been telling it— he told me it was true. I heard it reported before he told me. I had talked it before this time. I haven't taken any stock in this prosecution except what any citizen should do to testify to the truth when I am put on the stand. I wouldn't be positive as to the exact words I testified before but I state here that he confessed to me and told me all about it. My recollection is that on the last trial I mentioned it."

The witness further testified as follows:

"Mr. Couch had a conversation with me at the court house in Palo Pinto—I can't state when it was—it was prior to one of the trials, but at a time when the case was set for trial. I couldn't say which of those trials it was, but it is my opinion that it was the first. I have believed he killed him in cold blood—Mr. Edrington told me he did. Couch came to me and asked me if I was going to testify that he killed Edrington in cold blood and I told him I was. He never asked me about anything that Edrington said to me. I think the fact that Mr. Edrington said so is the best evidence in the world."

We fail to see how this testimony in any way indicated that the appellant was seeking to intimidate this witness. The fact that the appellant had been convicted in 1908, under the facts of this case, was entirely too remote and was not admissible for any purpose, and while under the statement of the trial court

and the peculiar facts occurring on this trial, we might not be disposed to reverse the case on account of its admission, yet on another trial we think it the clear duty of the trial court to see that no reference is made to this former conviction.

There are many other errors complained of by the appellant but in view of the fact that they may not occur in the same form on another trial of the case a discussion of them is not deemed necessary, but for the errors above mentioned the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The state's motion urges that we erred in each of the points on which this case was reversed, replying to which appellant insists that our action in the reversal was correct. A trial for murder at a former time, with conviction of manslaughter, which was reversed on appeal, left in the case only the issues of manslaughter, or a killing in self-defense. The verdict again being for manslaughter, errors in the charge submitting that offense would not demand consideration unless same in some way injuriously affected the question of self-defense.

Noting paragraph five of the charge, quoted in our original opinion, wherein the court applied the law of manslaughter to the facts of the case, we have again carefully examined each part thereof in view of the insistence in appellant's argument, in reply to the state's motion, that same was in some way calculated to draw the minds of the jury away from his plea of self-defense, but are unable to find support for such complaint. The trial court told the jury therein that they must believe beyond a reasonable doubt that appellant killed the deceased, and if so, and they further believed he had been informed that deceased had threatened to kill him and believed such information, and that the parties met, and if they believed that by reason of such information, taken together with all the facts and circumstances in the case and considered in connection with the language and conduct of deceased at or just before the killing, or if from any or all the facts and circumstances in evidence there was aroused in the mind of appellant such a degree of rage, anger, etc., and in that condition he shot and killed deceased, "and that he was not justified in so doing", then they would find him guilty of manslaughter. In our former opinion we stated that this paragraph of the charge

placed upon appellant a greater burden than was proper. Keeping in mind that this conviction was for manslaughter, the only part of said paragraph which placed any burden at all in other regards upon appellant was the phrase "and that he was not justified in so doing." If the trial court, in lieu and instead of said expression, had told the jury that they should convict the accused of manslaughter if they believed those facts existed making out such offense, and, further believed "that he did not act in self-defense", this would hardly be urged as placing an unnecessary burden upon the appellant. Such we believe to be the legal effect of the expression used in the charge, and have concluded that we were mistaken in holding that same placed an unnecessary burden upon the accused. It is manifest that the jury could not convict him of any offense unless they believed beyond a reasonable doubt that he was not justified in shooting deceased.

Referring to the second point deemed erroneous in our original opinion, a more careful examination of the record shows that the court, out of abundance of caution, gave appellant's special charge No. 1 which was of similar import and substance as special charge No. 5, which was referred to in our opinion and the refusal of which was deemed erroneous. We overlooked the fact of giving same, which obviated the necessity if any existed for giving special charge No. 5.

Upon the other point considered and deemed erroneous, we observe that appellant was convicted of robbery in 1908 in Arizona and in October 1912 was granted a pardon, though apparently he was not restored to citizenship until 1920. This homicide occurred in August, 1920, something over seven years after he was released from the Arizona penitentiary. His indictment and first trial occurred soon after the killing. State witness Roberson testified on said trial that in a conversation had with appellant the latter referred to said conviction and incarceration. On the instant trial said witness testified without objection to the same facts, and later, at the instance of appellant, his testimony in this regard on a former trial was introduced. Manifestly testimony that the accused, who was a witness in his own behalf, had been in a penitentiary seven or eight years before for robbery, was permissible as affecting his credibility as a witness. We are not led to believe if following a conviction there was an appeal and reversal, which legal process has occupied two or three years, that upon another trial the testimony as to his conviction or incarceration should be held inadmissible. We think there was no error in the ac-

tion of the learned trial judge in limiting this testimony to the sole issue of the credibility of the accused, if the jury believed said testimony so affected same. Nor was there error in refusing the special charge asked by appellant seeking to have the jury told that they could not consider such testimony for any purpose.

A picture of deceased was introduced in evidence and was shown to be a faithful likeness of deceased as he appeared some three years before the killing. There is not a word of testimony in the record remotely tending to show that there had been any change in the appearance of deceased during that time. We are not able to find any issue before the jury, the determination of which could have been hurtfully affected by the introduction of said picture. Appellant was given the lowest penalty allowable under the charge. There was abundant testimony in the record upon which the jury might have been justified in giving him a much more severe penalty.

Appellant claimed that when he called deceased to come to where he was, he came with his hand in his pocket and refused to take his hand out of his pocket upon appellant's demand; that after deceased refused to take his hand out of his pocket he, appellant, slapped deceased and drew his gun and shot a number of times. He asserted that he believed deceased had a pistol and was bringing it out of his pocket for the purpose of using it, when he fired and killed deceased. This raised the issue of self-defense, but the state's testimony against same was overwhelming, and we confess ourselves unable to perceive how the appellant's rights in this regard could have been injuriously affected by the introduction of the picture, even though there had been much or little change in the appearance of the deceased during the three years intervening between the homicide and the taking of said picture.

Being of opinion that we erred in our reversal of this case, and that the state's motion for rehearing should be granted, the judgment of reversal is set aside, and the judgment of the trial court herein is in all things affirmed.

*Affirmed.*

ON MOTION FOR REHEARING BY APPELLANT.

LATTIMORE, JUDGE.—Appellant files an extended motion for rehearing taking issue with each ground on which we granted the state's motion for rehearing, and affirmed this case.

Paragraph five of the charge of the court is quoted in our original opinion and analyzed in our opinion on rehearing. When one on trial for manslaughter claims self-defense, it is so evident as not to need discussion that he can not be convicted unless the jury believed beyond a reasonable doubt that he did not kill in self-defense. The court in said paragraph of his charge had told the jury under what circumstances the killing would be manslaughter, and that if they believed beyond a reasonable doubt that the killing was so done "and that he was not justified in so doing," then to find him guilty of manslaughter. We cannot make clearer the proposition that this imposed no burden on appellant. If the court had told the jury that they must believe beyond a reasonable doubt that the defendant "was justified" in killing deceased—then, indeed, the accused would have ground for complaint—but none whatever when the court in compliance with his duty told them, as he did, that before they could convict they must believe beyond a reasonable doubt that he was "not so justified."

Appellant again urges that having given a charge on provoking the difficulty, the court should have given his special charge No. 5. In the main charge the court fully gives the converse of provoking the difficulty, and the jury were told that if they had a reasonable doubt as to whether the difficulty was provoked with any intention of killing or seriously injuring the deceased, or if they had a reasonable doubt as to whether the language or conduct of appellant was reasonably calculated to provoke deceased to attack him—in either event his right of self-defense would not be impaired. Special charge No. 1 told the jury that if appellant had ben informed that the deceased had been making scurrilous remarks concerning him and had threatened his life, he had the right to arm himself and seek an interview for the purpose of composing their differences.

The expression in our opinion as follows: "though apparently he was not restored to citizenship until 1920", seems to have been erroneous, but our view of the correctness of the court's action in the matter under discussion, viz: the reception of testimony regarding appellant's conviction for robbery and incarceration in the Arizona penitentiary, was in no way effected by said expression. We do not think said testimony related to a transaction too remote. The testimony was not objected to when offered. Witness Roberson swore on this trial that on a former trial of this case he testified that appellant had told him he had been convicted and served a term in the Arizona peni-

tentiary. Appellant was pardoned out of said penitentiary in October 1912, and this homicide occurred in August 1920, seven years and ten months after the pardon. There is nothing in our opinion on a former appeal of this case (see 245 S. W. Rep. 692) that suggests that this evidence was inadmissible. It does appear from said opinion that a motion was filed by appellant seeking to have the court direct the state not to go into this and another criminal charge against the appellant, if he took the witness stand. The court below declined to act on the motion and appellant did not testify on that trial. In Davis v. State, 52 Tex. Crim. Rep. 629, a conviction for crime six years before the crime for which the defendant was on trial, was held not too remote. In Scoville v. State, 77 S. W. Rep. 792, nine years was held not to be too remote. See also Richardson v. State, 91 Tex. Crim. Rep. 320; Bibb v. State, 86 Tex. Crim. Rep. 118.

The introduction of a picture of deceased taken about three years before the homicide, is again argued. The matter seems unimportant. No testimony is in the record showing any description of the picture, nor anything that could give the matter any importance, or from which this court could draw the slightest inference of injury. Before this court would reverse a case for an alleged error in the introduction of testimony, it must appear that we can perceive some injury to the accused. Matters merely erroneous will not suffice to reverse cases. Hofheinz v. State, 45 Tex. Crim. Rep. 117; Jordan v. State, 10 Tex. Crim Rep. 479.

The matter complained of in bill of exception No. 1 can not be construed into such a reference to a former trial as to make that fact known to the jury.

Provoking a difficulty can arise in any case where self-defense is relied on by the accused, if the facts are presented. We have no doubt of the propriety of a charge on provoking the difficulty in this case. The facts show that deceased was leaving the Damron hotel when appellant, according to his own contention, called to him and told him to come over there; as deceased approached with his hand in his pocket appellant ordered him three times to take his hand out of his pocket, then slapped him, and shot him. He claimed that after the third command to deceased, the latter shook his finger or fist in appellant's face and started to take his hand out of his pocket. If there arose from these facts any question of self-defense, based on a sup-

posed attack by deceased, a jury question would thus be raised which could only be decided upon an appropriate instruction upon provoking the difficulty.

When the court gave the charge limiting the purpose of the admission of testimony regarding appellant's conviction of robbery in Arizona, this obviated the need for appellant's special charge No. 2.

The other matters argued in the motion have been considered, but no reversible error appears, and appellant's motion for rehearing will be overruled.

*Overruled.*