**William Parma GASSETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56825.**

Court of Criminal Appeals of Texas, Panel No. 1.

April 4, 1979.

Rehearing Denied Oct. 31, 1979.

Dissenting Opinion Oct. 31, 1979.
See 589 S.W.2d 699.

Larry S. Parnass, George T. Bond and Carl R. Golden, Irving; for appellant.

Henry M. Wade, Dist. Atty., Steve Wilensky and Hugh Lucas, Jr., Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., PHILLIPS and TOM G. DAVIS, JJ., and KEITH, Commissioner.

## OPINION

KEITH, Commissioner.

The jury convicted appellant of murder with malice and set his punishment at confinement for twenty-two years.

Under the undisputed record, appellant shot Dr. Bob Sollock once in the chest with a pistol and the wound caused death almost instantaneously. Appellant was married to the former wife of the deceased and there had been many court hearings involving the custody of a child born of the marriage of the deceased and appellant's wife.

The last custody hearing resulted in a modification of the decree whereby the deceased regained custody of the child and appellant's wife was directed to deliver such child to deceased at a particular time and place. Instead of complying with the order, appellant, his wife, and the child left the state on the same day the order was pronounced from the bench. The avowed purpose was to prevent the deceased from having his child with him in accordance with the new order. Appellant's wife and her child remained outside the state at all times up to and including the date of the homicide. Appellant, however, returned to Dallas about a week before the homicide. In the meanwhile, Dr. Sollock had been endeavoring to locate appellant, his former wife, or the child and frequently had driven around the neighborhood where appellant resided.

On the night of the homicide, July 11, 1973, the deceased and his wife drove by the home of his former wife's parents but saw no lights and they continued driving toward appellant's home when appellant in a pickup truck began following their car. After several blocks, appellant "curbed" the deceased's car and, with a pistol in his hand, came up to the car where deceased and his wife were still seated.

According to deceased's wife, as appellant came up to their car, he stated: "All right, you sorry son-of-a-bitch, I'm tired of you driving by this neighborhood," to which deceased replied that it was a public street. Thereupon, appellant challenged him to get out of the car.

Deceased did so but not before he reached under the seat and got his own .357 two-shot derringer pistol. Deceased had the pistol in his right hand as he got out of the car—his wife saying that it was behind his back, appellant saying that it was in the open and plainly visible. As deceased was in the process of moving his hand forward, appellant fired the single shot which killed Sollock.

Additionally, appellant testified: (1) he was afraid for his life; (2) this fear arose

because of the child custody case and he was fearful that deceased would do him bodily harm; (3) he had formed this fear after having seen pictures of his wife disclosing injury done to her by deceased; (4) his wife told him she had been beaten by deceased; (5) he knew deceased carried a gun; (6) he had been told that deceased had been to his house upon at least two occasions and was armed each time; (7) deceased had attacked appellant's father-in-law on at least one occasion; and (8) he knew deceased carried a gun in his car.

Appellant also testified that he approached the car seeking an explanation of Sollock's continued surveillance of his home and that he had no intention of killing Sollock on the occasion in question. Indeed, he testified that had Sollock turned away from appellant's home after leaving the home of the wife's parents, appellant would not have followed Sollock's car.

The court's full and unlimited charge on self-defense was qualified by a charge on provoking the difficulty. Appellant tendered a requested written instruction (and filed written objections to its omission from the charge) relating to his right to carry arms to the scene of the difficulty. The tendered instruction was couched in the precise language of the instruction quoted in *Young v. State,* 530 S.W.2d 120, 121 (Tex.Cr.App.1975).

As noted in *Young,* the giving of the charge on provoking the difficulty was not erroneous since it was supported by the evidence introduced by the State. However, *Young* is dispositive of the contention now urged. Holding squarely that the new Penal Code did not change the rule prevailing under the old Code, this language controls the disposition of the cause:

"On the other hand, it is equally well settled that if the court's instruction limits the accused's right of self-defense by a charge on provoking the difficulty, then the jury should be advised in a proper instruction under the facts that the accused's right of self-defense would not necessarily be abridged by the fact that he carried arms to the scene of the diffi-

culty if such instruction is supported by the evidence." (530 S.W.2d at 122, citations omitted)

Of course, we do not hold that appellant's own testimony required the jury to accept his version of the facts. We simply hold that the evidence introduced was sufficient to require the additional instruction to ameliorate the limitation imposed upon his right of self-defense by the charge on provoking the difficulty.

The other grounds of error presented in appellant's brief are not likely to recur upon another trial so they are not discussed herein. Having found reversible error, the judgment of the trial court is reversed and the cause remanded.