Michael Joseph BANKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 066–82.

Court of Criminal Appeals of Texas,
En Banc.

June 15, 1983.

Rehearing Denied Sept. 14, 1983.

Dick DeGuerin, Lewis Dickson, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Joan Fisher and R.P. Cornelius, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

After finding appellant guilty of the offense of murder, the jury assessed punishment at fifteen years. The conviction was affirmed by the Court of Appeals. *Banks v. State,* 624 S.W.2d 762 (Tex.App. 14th Ct. of App.1981). We granted appellant's petition for discretionary review in order to review the Court of Appeals' holdings: (1) that appellant could not complain of the trial court's refusal to give his requested charge on his right to arm himself and seek an explanation since appellant invited any error in such refusal by requesting the charge given on provoking the difficulty and (2) that there was no evidence to support a charge on appellant's right to arm himself and seek an explanation.

The Court of Appeals' opinion recognized that we have held that once a charge of self-defense is limited by a provoking the difficulty instruction the trial court is obligated to also charge on a defendant's right to carry arms to the scene of the difficulty and to seek an explanation where supported by the evidence. *Gassett v. State,* 587 S.W.2d 695 (Tex.Cr.App.1979). The Court of Appeals reasoned that since appellant asked for the charge on provoking the difficulty, normally "thought of as a prosecution

charge," he could not complain of the court's failure to include the requested charge.

 We find that the concurring opinion in the court of appeals correctly reasoned that any error in failing to give the requested instruction was not invited by appellant's request of a charge on provoking the difficulty. As noted in the concurring opinion the cases relied on in the opinion, *Stiles v. State,* 520 S.W.2d 894; *Cadd v. State,* 587 S.W.2d 736 (Tex.Cr.App.1979) and *Cain v. State,* 549 S.W.2d 707 (Tex.Cr.App.1977) were all instances where the defendant was complaining of a charge which had been given at the defendant's behest as contrasted to a court's refusal to give a particular charge or a portion thereof. The fact that appellant may have requested a provoking the difficulty charge in no way prevented him from complaining of the trial court's failure to give his requested instruction on his right to arm himself.

Appellant testified in his own behalf, admitting that he shot the deceased, but claiming that he acted in self-defense when the deceased turned toward him. Appellant related that he and the deceased had been engaged in a feud for some time, and the deceased had constantly "bullied" and "picked on" him. He further testified that he was afraid that deceased "would have jumped on me and beat me up" if he had not taken a pistol with him when he went to ask the deceased to return his money. According to appellant, his sole reason for seeking out the deceased was to get his money back, and that he had no intention of killing him nor did he approach the deceased with the thought of provoking him so that he could kill the deceased.

In *Gassett v. State,* supra, complaint was made of the trial court's refusal to grant the defendant's requested charge on the right to carry arms to the scene of the difficulty where the court's charge on self-defense had been qualified by a charge on provoking the difficulty. We found our opinion in *Young v. State,* 530 S.W.2d 120 (Tex.Cr.App.1975) to be dispositive. In *Young* it was stated:

"... it is equally well settled that if the court's instruction limits the accused's right of self-defense by a charge on provoking the difficulty, then the jury should be advised in a proper instruction under the facts that the accused's right of self-defense would not necessarily be abridged by the fact that he carried arms to the scene of the difficulty if such instruction is supported by the evidence."

 As in *Gassett,* we do not hold that appellant's testimony required the jury to accept his version of the facts. We merely hold that the evidence introduced was sufficient to require the requested additional instruction to ameliorate the limitation imposed upon his right of self-defense by the charge on provoking the difficulty, without regard to who requested the charge on provoking the difficulty.

The judgment of the Court of Appeals is reversed. The cause is remanded to the trial court for a new trial.

McCORMICK, Judge, dissenting.

Because the majority fails to address the overriding issue in this cause, I must dissent. The majority, despite the clear legislative expression to the contrary, continues to follow the Code of the West and proliferate the romantic notion that everyone in Texas can tote his .45 and settle his differences at high noon on main street.

Though I run the risk of being forever ostracized by the purveyors of Texana, I must advocate the abolition of the charge on a defendant's right to carry arms to the scene of the difficulty and to seek an explanation of differences. We should wait no longer to be dragged, kicking and screaming, into the twentieth century; we should make the expedition voluntarily. The Legislature recognized this with the passage of the new Penal Code in 1973. After ten years, this Court should now give proper meaning to those intendments.

The right of a defendant to arm himself and seek an explanation or discussion concerning his differences with the deceased has its genesis in Texas jurisprudence in the

case of *Cartwright v. State,* 14 Tex.App. 486 (1883). This "right" was first fully stated eleven years later in *Shannon v. State,* 35 Tex.Cr.R. 2, 28 S.W. 687 (Tex.Cr. App.1894). The right has not been provided for by either the Constitution or statutes of the State. It has survived continually as part of the court made law for one hundred years, despite its apparent legislative interment in 1973.

The passage of the new Penal Code in 1973 brought with it many changes in the substantive criminal law of this State. But none were more drastic than the changes made in the law of justification.[1] For the first time, the defense of necessity was firmly established in the criminal law of Texas. For the first time, the law restricted the right of a person to resist an unlawful arrest by the use of force. The restriction on the right of self-defense known as provoking the difficulty was codified for the first time. Mutual combat was likewise statutorily recognized for the first time. And perhaps even more directly affronting the western heritage, a man was required to retreat for the first time.

The commentators all recognized that these changes were designed to remove the street as the forum for determining the differences of parties, and place disputes where they belonged: in the courthouses of the State. The Legislature having codified the law of self-defense, the conclusion is inescapable that their failure to include the right to arm oneself was a refutation of a rule they found repugnant to the times.[2] This philosophy is not new:

"It will doubtless work a great improvement on the moral and social condition of men, when every man shall come fully to understand that, in the great social compact under and by which states and communities are bound and held together, each individual has compromised

the right to avenge his own wrongs, and must look to the state for redress. We must not go back to that state of barbarism in which each claims the right to administer the law in his own case; that law being simply the domination of the strong and the violent over the weak and submissive.

"It is useless to talk about personal liberty being infringed by laws such as that under consideration. The world has seen too much licentiousness cloaked under the name of natural or personal liberty; natural and personal liberty are exchanged, under the social compact of states, for civil liberty." [3]

Such was the description given by Justice Walker in discussing the effect of the act of April 12, 1871, regulating, and in certain cases, prohibiting, the carrying of deadly weapons. In upholding these statutes against a charge that they infringed upon the constitutional right of the people to keep and bear arms, Justice Walker pointed out that the other states of the Union had such laws and that Texas was just coming of age and was at the point where its enactment was justified:

"This law is not peculiar to our own state, nor is the necessity which justified the enactment (whatever may be said of us to the contrary) peculiar to Texas. It is safe to say that almost, if not every one of the states of this Union have a similar law upon their statute books, and indeed, so far as we have been able to examine them, they are more rigorous than the act under consideration. Other older states have been better able to carry out these laws than we have yet been, and the laws perhaps themselves have been less repugnant to the people of those states, than our law has been to a class of our own people." *English,* supra, at 479.

Justice Walker concluded:

---

1. For a detailed explanation of the examples which are set forth, see: *Practice Commentary,* Searcy and Patterson, V.A.T.C. Penal Code, Chapter 9; and *Explanatory Comments,* 1 Branch's Texas Annotated Penal Statutes, 3rd ed., Chapter 9.

2. Perhaps even more telling of the changing attitude of the 1973 Legislature was the repeal of Art. 1220, Penal Code (1925), which had justified the homicide committed by a husband upon his wife's paramour.

3. *English v. The State,* 35 Tex. 473 (1872).

We do not think the people of Texas are so bad as this, and we do think that the latter half of the nineteenth century is not too soon for Christian and civilized states to legislate against any and every species of crime.... We will not say to what extent the early customs and habits of the people of this state should be respected and accommodated, where they may come in conflict with the ideas of intelligent and well-meaning legislators." *English,* supra, at 479–480.

I believe the Legislature intended in 1973 to abolish that portion of the law which allowed a person to arm himself and seek an explanation. If this Court continues to allow this to be the law then we are advocating a violation of the law by allowing a person to carry prohibited weapons contrary to the provisions of Sec. 46.02, V.T.C.A. Penal Code. We are also saying to the lawless element of our society that it is permissible to arm yourself and go to your antagonist knowing you may have to kill him. We are saying, don't clutter our courts with civil suits to arbitrate your differences; instead, add to our overcrowded criminal dockets with homicide cases which arise from senseless elimination of human lives.

> "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind immitation of the past." Oliver Wendall Holmes, *The Path of the Law,* 10 Harv.L.Rev. 457, 468 (1897).

CAMPBELL, J., joins in this dissent.

## OPINION IN DENIAL OF STATE'S MOTION FOR LEAVE TO FILE A MOTION FOR REHEARING

CLINTON, Judge, concurring.

Almost two years after the effective date of the present penal code, *Young v. State,*

530 S.W.2d 120 (Tex.Cr.App.1975) was unanimously decided by the Court. The State Prosecuting Attorney presented the contention that "since the Legislature saw fit to include the law on provoking the difficulty but failed to include any provision on the right of an actor (accused) to arm himself and seek an explanation, such right no longer exists," *id.* at 123. Rejecting it, the Court did not agree that either the provisions or the legislative history indicate that such was the intention of the Legislature. Accordingly, the Court concluded:

> "We decline to overrule the rule the State seeks to abolish which has long been part of the case or decisional law of this State ... [citations omitted] and see no conflict of such rule with the new Penal Code." *Ibid.*

A mere reiteration of the same contention eight years later is not enough to justify one who was not a member of the Court then to say now that *Young v. State,* supra, was wrongly decided. Absent new evidence of legislative purpose compelling a different conclusion, the doctrine of *stare decisis* obliges a successor Judge to adhere to findings and holdings of his predecessors.

The District Attorney is content to embrace the dissenting opinion on original submission and to ask rhetorically, "Are we a society governed by law or by the fastest gun?" So long as the law recognizes a general principle of necessity justifying conduct that would otherwise be criminal—a traditional common law defense[1]—the answer may be "both." See, e.g., *Armstrong v. State,* 635 S.W.2d 810 (Tex. Cr.App.1983).

The State Prosecuting Attorney also commends the dissenting opinion, as well as condemning the requested instruction in question. He contends the instruction is: tantamount to judicial approval of a "right" to violate a criminal statute of this State,

---

1. V.T.C.A. Penal Code, § 9.22 and Practice Commentary following. For an unsuccessful assertion of the defense in an extraordinary situation, see *United States v. Holmes,* 1 Wal-

lace Jr., 1 (CA3 1842), Hor. & Th.Cas. 757, in which, moved by their own sense of selfpreservation, sailors threw passengers over the side of their floundering long boat.

i.e., V.T.C.A. Penal Code, § 46.02;[2] "was never logical;" and is "even more illogical under the new Penal Code." In essence his position is that "the so-called 'right' in question was derived from a frontier *tradition* of freedom to bear arms ..." (emphasis in original), and that it is now passe.

One of the most succinct statements of the matter is found in *Shannon v. State,* 35 Tex.Cr.R. 2, 28 S.W. 687 (1894):

"The fact that one with a grievance arms himself, and seeks an interview with the man who wrongs him, is not necessarily a provocation, nor does it place the injured party necessarily in the wrong. He must also, as said by Judge Hurt in *Cartwright's Case,* 14 Tex.App. [486] 502, 'willingly and knowingly use language or do acts reasonably calculated to lead to an affray or deadly conflict;' and, unless the acts are clearly calculated or intended to have such an effect, the right of self-defense is not compromitted [sic], even though the party armed himself and went there for the purpose of a difficulty. *White's Case,* 23 Tex.App. 154, 164, 3 S.W. 710 [1887]." *Id.,* 28 S.W. at 688.

James M. Hurt was Presiding Judge of the *Shannon* court. He had been a member of the former court of appeals and wrote the opinion not only in *Cartwright's Case,* supra, but also *White's Case,* supra. In researching the law of selfdefense he often resorted to Horrigan & Thompson, *Select American Cases on the Law of Self-Defense,* Soule, Thomas & Wentworth (St. Louis 1874) (Hor. & Th.Cas.) and drew from cases and notes therein principles of law he then applied to the cause under consideration. Thus, in *Cartwright's Case,* 14 Tex. App. at 499, he cited and discussed *Commonwealth v. Selfridge,* Hor. & Th.Cas. 1; in *White's Case,* 3 S.W. at 713 he mentioned *Selfridge's Case* as well as notes to *Stoffer's*

Case, [*Stoffer v. The State,* 15 Ohio State 47 (1864) ], Hor. & Th.Cas. 227.

*Selfridge's Case* was tried in 1806 in Boston, Massachusetts. Selfridge was a distinguished member of the Suffolk bar; he occupied the same office with Lemuel Shaw who was to become Chief Justice of Massachusetts. The deceased was Charles Austin, a student of Harvard University and the eighteen year old son of Benjamin Austin, a political writer and active Democratic Party politician, with whom Selfridge was having a bitter public disagreement. The fatal encounter occurred near Half Court Square in what seems from the report to be practically downtown Boston. It was undisputed that Selfridge shot Charles Austin with a pistol which, his counsel argued, was his practice to carry, upon being attacked with a cane by young Austin. The jury was fully charged on the law of selfdefense including provoking the difficulty, and the court concluded that part of the charge with the following assurances:

"The principles which I have thus stated are recognized by all the books which have been read, and are founded in the natural and civil rights, and in the social duties of man." Hor. & Th.Cas., at 27.

The trial judge made no allusion to "a frontier tradition of freedom to bear arms" in his charge to a jury of Bostonians. Nor did Presiding Judge Hurt, or for that matter any other judge of the court or of the former court of appeals, ever find such a tradition and rely on it in reaching the conclusion that a jury instructed on provoking difficulty should also be told that the right to selfdefense is not necessarily abridged by the fact that he carried arms to the scene of the difficulty. The probable reason is that the notion was not conceived by Texas judges, but may be traced back at least to the common law as expounded by Blackstone.[3]

---

**2.** Section (a) of which provides that one commits an offense who "intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club." In this connection the State Prosecuting Attorney correctly points out that circumstances in which § 46.02 is not applicable do not include carry-

ing a handgun to seek an explanation from one who has aggrieved him. See § 46.03.

**3.** Also reported by Horrigan & Thompson is *Cotton v. The State,* 31 Miss. 504 (1856), Hor. & Th.Cas. 310, in which appears the following bit of "frontier tradition:"

Nevertheless, the State Prosecuting Attorney has discovered that from the Act of April 12, 1871 until deleted by Acts 1918, 35th Leg., 4th C.S., ch. 91, the statute denouncing bearing of arms exempted, *inter alia,* "one who has reasonable ground for fearing an unlawful attack upon his person, and the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack, upon legal process." From this he suggests that after 1918 judicial recognition of a "right" to arm oneself when going to seek an explanation, being "so blatantly obnoxious to an unambiguous statute," is "inexcusable."

The State misapprehends the statutory exception. "A party may act in self-defense in a difficulty, and at the same time violate the law against carrying a pistol." *Woodroe v. State,* 50 Tex.Cr.R. 212, 96 S.W. 30, 31 (1906). At its inception the statute itself provided a defense to a charge of unlawfully carrying on or about his person, saddle or saddle bags one or more of the weapons denounced by law: "pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purposes of offense or defense ...," Act of April 12, 1871, 6 Gammel's Laws of Texas 927. Section 2 required an accused who raised defensively that he "was in danger of an attack on his person" to show "that such danger was immediate and pressing, and was of such a nature as to alarm a person

of ordinary courage," and that the weapon carried by him was "borne openly and not concealed beneath the clothing;" however, he lost the defense should it appear that "this danger had its origin in a difficulty first commenced by the accused," *ibid.*[4] The law did not prohibit carrying a pistol unless in a manner proscribed by the statute. *Lewis v. The State,* 2 Tex.App. 26, 30 (1877); see also *Cathey v. State,* 23 Tex. App. 492, 5 S.W. 137 (1887).

When the statute was revised along with other provisions of the penal code in 1879, the defense, or exception as it was sometimes called, was more succinctly stated. Thus the prohibition did not apply "to one who has reasonable ground for fearing an unlawful attack on his person, and the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack upon legal process." Article 319, P.C. 1879. Subsequent penal code revisions in 1895 and 1911 made no change of substance in what became Article 339 and Article 476, respectively.

While the exception remained in the statute whether evidence warranted a conviction or whether an accused was entitled to an appropriate instruction in the charge of the trial court depended, of course, on the state of evidence adduced. Ordinarily the key test was just how "imminent and threatening" the danger of an attack on his person appeared to be at the time an accused took up his weapon.[5] So, rarely was

"The rule is thus stated by Blackstone: 'If the slayer has not begun the right, or, having begun, endeavors to decline any further struggle, and, afterwards being closely pressed by his antagonists, kills him to avoid his own destruction, this is homicide, excusable by self-defence,' 4 Bla.Com., 184. In such case, the party having commenced the difficulty, he can only use his weapon in self-defence or take the life of the other party, when the danger is immediate or impending or unavoidable."

4. Though the prohibitory section of the Act of April 12, 1871, was immediately upheld by the "Carpetbag Court" in *English v. State,* 35 Tex. 473 (1871–1872), neither it nor the later opinion of the former court of appeals in *Lewis v. State,* 7 Tex.App. 567 (1880) directly addressed the matter of provoking the difficulty. And, as shall be shown, that matter was itself short-

lived, being omitted in 1879 with other revisions of the penal code.

5. E.g., in the order of opinions developing the test, are *Coleman v. State,* 28 Tex.App. 173, 12 S.W. 590 (1889); *O'Neal v. State,* 32 Tex.Cr.R. 42, 22 S.W. 25, 26 (1893); *Brownlee v. State,* 35 Tex.Cr.R. 213, 32 S.W. 1043, 1044 (1895); *Thompson v. State,* 48 Tex.Cr.R. 146, 86 S.W. 1033, 1034 (1905); *Hargrove v. State,* 53 Tex. Cr.R. 541, 110 S.W. 913, 914 (1908); *Hines v. State,* 57 Tex.Cr.R. 216, 123 S.W. 411, 412 (1919); *Ellias v. State,* 65 Tex.Cr.R. 479, 144 S.W. 1139 (1912); *McQueen v. State,* 76 Tex. Cr.R. 636, 177 S.W. 91 (1915); *Pecht v. State,* 82 Tex.Cr.R. 136, 199 S.W. 290, 291 (1917); *Payne v. State,* 84 Tex.Cr.R. 2, 204 S.W. 765 (Tex.Cr.App.1918).

there an occasion in such cases to discuss the doctrine of provoking the difficulty, but there are at least two that do—with mixed understandings.

First, without mentioning the statutory exemption at all, the Court held in *Quinn v. State,* 50 Tex.Cr.App. 209, 96 S.W. 33 (1906), that one charged with unlawfully carrying a pistol who, while on his way home with it, stopped at the house of and called out another to obtain an explanation of alleged insulting conduct toward his wife, was entitled to a charge to the effect that he "had a right to stop by Nicholson's to ask an explanation, and to defend himself with a pistol, if attacked," because "that was the defense claimed by appellant," *id.,* at 34.

On the other hand, in *Ballard v. State,* 74 Tex.Cr.R. 110, 167 S.W. 340 (1914), the accused contended he had the right to arm himself with a pistol and hunt a person who had had adulterous relations with him to meet and resist whatever might arise when he found his prey and demanded an explanation, but the Court held such conduct of the other person "does not justify one in carrying a pistol on and about his person," for that "is not one of the exceptions enumerated by the statute, and the court has no authority to engraft others therein." However, the Court further opined:

> "When he finds deceased, the facts and circumstances arising at the time may justify the homicide; but it does not excuse nor justify the carrying of the pistol." *Id.,* at 340.

After the exception was removed in 1918 the Court held that the defense formerly recognized by law no longer existed. *Slack v. State,* 107 Tex.Cr.R. 263, 296 S.W. 309, 310 (1927), and *Davenport v. State,* 94 Tex.Cr.R. 38, 250 S.W. 179, 180 (1923) (Opinion on Rehearing). But it does not follow that longstanding and applied principles of law of selfdefense then lost vitality. The same Judges who decided *Slack* and *Davenport,* supra, wrote and approved opinion after

6. Ironically, if the position of the State be accepted, the defense would be reserved only for an accused who arms himself with a rifle or

opinion requiring a proper instruction on the right to arm oneself when the trial court limited and qualified an accused's right to selfdefense by charging on his provoking the difficulty: *Carlile v. State,* 96 Tex.Cr.R. 37, 255 S.W. 990 (1923); *Moore v. State,* 96 Tex.Cr.R. 493, 258 S.W. 476 (1924); *Clark v. State,* 99 Tex.Cr.R. 80, 268 S.W. 465 (1925); *Dunne v. State,* 102 Tex.Cr.R. 435, 278 S.W. 201 (1925); *Couch v. State,* 103 Tex.Cr.R. 188, 279 S.W. 821, 824, 825 (1925–1926) are representative. As shown *ante,* that one violates the law in carrying a pistol or other prohibited weapon has never meant that he forfeits his right to use the pistol in selfdefense.[6] *Porter v. State,* 152 Tex.Cr.R. 540, 215 S.W.2d 889, 890–891 (1948) states "the true rule," 4 Branch's Annotated Penal Code (2nd Ed.) 453, § 2128. That is,

> "[I]f the court's instruction limits accused right of self-defense by a charge on provoking the difficulty, ... then the jury should be advised in a proper instruction under the facts that accused's right of self-defense would not necessarily be abridged by the fact that he carried arms to the scene of the difficulty."

As in *Gassett v. State,* 587 S.W.2d 695 (Tex.Cr.App.1979), so in the case at bar the opinion on original submission correctly found that *Young v. State,* supra, is dispositive.

Accordingly, I concur in the denial of the State's motion for leave to file a motion for rehearing.

MILLER, J., joins.

shotgun or other deadly weapon not prohibited by statute from being carried on or about his person.