EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
AUGUSTO DIEPPA, acusado y apelante.

No. 4622.—*Sometido:* Marzo 15, 1932. *Resuelto:* Abril 8, 1932.

*B. Guerra-Mondragón,* abogado del apelante; *E. Díaz Viera, Fiscal Auxiliar,* abogado de *El Pueblo,* apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Se imputó a Augusto Dieppa el hecho de haber portado sobre su persona un revólver, voluntaria, ilegal y maliciosamente y para fines de ofensa y defensa, el 7 de mayo de 1931 y en el pueblo de Juncos. La causa se vió primero en la Corte Municipal de San Lorenzo y luego en la Corte de Distrito de Humacao. De la sentencia condenatoria de la última corte apeló Dieppa para ante este Tribunal Supremo habiendo presentado por medio de su abogado un amplio alegato en apoyo del recurso.

No hay duda alguna de que la denuncia es suficiente. No la ataca el acusado. Examinemos la prueba.

Consistió la del Pueblo en las declaraciones de varios testigos y en la presentación del revólver ocupado al acusado por uno de ellos en la fecha y en el sitio especificado en la denuncia. Declaró el primer testigo, Isabelo Zayas, que había tenido un disgusto con el acusado y en la noche de autos lo vió cruzar por la plaza y le dirigió algunas palabras agresivas, que el acusado penetró en un callejón y el declarante siguió hablando con otras personas, cuando casi en seguida sintió por detrás unos disparos. El segundo testigo, el policía Santiago, sintió unas detonaciones, se dirigió al sitio y encontró al acusado con un revólver, que le ocupó. Las otras declaraciones son similares.

La prueba de descargo consistió en los testimonios de Virgilio Rodríguez, Gil Figueroa, Santiago Mojica, Ramón Ramos y en el del propio acusado. El primero declaró que tiene un puesto de frutas y la noche de que se trata fué el acusado a comprarle algunas que no tenía y poco después volvió corriendo y cogió un revólver que el testigo tenía encima de una mesa. Salió y seguido sintió unos disparos. Copiamos textualmente de la transcripción: "A repreguntas del Hon. Fiscal, el testigo declaró: no saber el calibre del revólver. Hacía un año que tenía ese revólver, el que no portaba ni usaba. Al preguntarle el fiscal: '¿Me hace

el favor de abrirlo?' el testigo hizo por abrirlo y no pudo. Al volver a preguntarle el fiscal: '¿No sabe abrir su revólver?' el testigo contesta: 'Yo he bregado por abrirlo, pero nunca lo he abierto; no lo he usado.' El revólver le costó siete pesos y se lo compró a un campesino en la calle no sabiendo el nombre de la persona a quien se lo compró.'' Figueroa dijo que se encontraba en el puesto de frutas de Rodríguez y vió cuando el acusado llegó primero y volvió después, corroborando en esos extremos la declaración de Rodríguez. Mojica presenció cuando Zayas insultó al acusado y cuando ''Zayas hizo como que se cogía el bolsillo así y Augusto Dieppa viró entonces para atrás, seguido rápidamente, y al salir empezó a disparar. El declarante no sabe a quién disparaba. Augusto Dieppa disparaba alto, para arriba. Hizo cuatro disparos.'' Ramos declaró en igual sentido. La declaración del acusado es en la misma línea. De sus contestaciones a las repreguntas del fiscal, transcribimos lo que sigue:

''. . . pasó por delante de la botica con dirección a la plaza y allí de la botica le dijeron unos insultos, frases insultantes, pronunciadas por Isabelo Zayas, y vió en él la actitud como del que va a sacar un arma. Y que es un hecho cierto que tuvo entonces en su mente la idea de armarse para defenderse y que por eso fué que se dirigió a la casa de don Rodrigo donde había visto un revólver, y donde llegó corriendo, apoderándose del revólver con intenciones de defenderse en caso de ser agredido, guardándose la funda y saliendo corriendo hizo los disparos . . . El revólver lo cogió para defenderse en caso de una agresión, pero su intención no fué la de vengar la amenaza y las frases que le había dicho. El testigo cumplirá treinta y nueve años el día diez y seis de octubre.''

El apelante sostiene que se trata de la portación incidental de un arma hecho que no constituye delito de acuerdo con la jurisprudencia sentada por este tribunal en los casos de *El Pueblo* v. *Moll,* 28 D.P.R. 783, *El Pueblo* v. *Santiago,* 34 D.P.R. 801 y *El Pueblo* v. *Ríos,* 41 D.P.R. 764, por la Corte de Apelaciones Criminales de Texas, de cuyo estado procede la ley vigente en Puerto Rico prohibiendo la

portación de armas, en los casos de *McQueen* v. *State,* 177 S.W. 91, *Rees* v. *State,* 263 S.W. 910, y por la Corte de Apelaciones de Georgia en los casos de *Amos* v. *State,* 78 S.E. 866 y *Harris* v. *State,* 85 S.W. 813.

No sólo cita el apelante los anteriores casos de Texas y Georgia si que los analiza en sus hechos y principios, facilitando así su estudio por este tribunal. Ese estudio nos permite asegurar sin dificultad alguna que se trata de situaciones distintas y que la regla de la portación incidental del arma no es aplicable a los hechos de este caso. En cuanto a las decisiones de esta corte invocadas por el apelante, las de Santiago y Ríos le son adversas y la de Moll revela circunstancias muy diferentes a las que aquí concurren.

En primer lugar, para confirmar la sentencia bastaría decir que la corte no estaba obligada a creer los testigos del acusado y que presentando la prueba de cargo creída por ella un caso claro en armonía con la denuncia, su sentencia estaba enteramente sostenida por los autos.

Quizá fué esa en verdad la conclusión a que llegó la corte. Sólo conocemos su sentencia.

Pero admitiendo que debiera darse entero crédito a la prueba de descargo, creemos que demuestra que el acusado portó el revólver de una manera ilegal.

El acusado fué insultado, pero el insulto cesó, retirándose sin ser perseguido. Ni para defenderse, ni para llamar la policía, ni para denunciar el hecho de que había sido víctima, se vió necesitado de arma alguna. Aunque el revólver no fuera suyo, lo tomó por su propia voluntad, salió a la calle con él, armándose con él para defenderse según su propia admisión, y lo disparó. ¿Cuál fué su propósito? ¿Herir? ¿Provocar? ¿Amedrentar? No importa. El hecho claro es que según su propia prueba portó para fines de ofensa y defensa un arma prohibida por la ley, y decimos para fines de ofensa porque la segunda escena se debió enteramente a su propia iniciativa. Aunque disparando al aire, fué él quien entonces rompió el fuego, acto que pudo

tener muy serias consecuencias si considerándose atacada la persona que antes lo había insultado hubiera entrado con él en lucha.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Wolf no intervino.