**William Parma GASSETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56825.**

Court of Criminal Appeals of Texas, Panel No. 1.

Oct. 31, 1979.

STATE'S MOTION FOR REHEARING

DOUGLAS, Judge, dissenting.

For majority opinion, see Tex.Cr.App., 587 S.W.2d 695.

The case is reversed because the jury was not charged that appellant had a "right" to arm himself and seek an explanation or discussion concerning his differences with the deceased. This "right" is not provided for by the Constitution of Texas or by the Legislature. Rather, it is a creature of this Court established many years ago and has become fixed and followed without ques-

tion. It is time to re-examine this "right" in the context of modern society. We are no longer in the frontier days when the rule was established. When a court-made rule is incorrect, a court can correct such a rule.

The right was first fully stated in *Shannon v. State*, 35 Tex.Cr.R. 2, 28 S.W. 687 (1894). In that case, the court explained the rule as follows:

". . . There is no question that one may speak to another about derogatory charges or statements made or circulated by such other person against him, without intending or even desiring to provoke a difficulty; and, knowing such other person is armed, he may also arm himself, not to provoke a difficulty or to produce an occasion for injuring the other, but to act, if necessary, in self-defense. If, then, in an attempt to adjust the trouble or reach an understanding, without any provocation on defendant's part, the insult or charge complained of is not only persisted in, but publicly repeated, and defendant, roused to passion thereby, replies in terms equally insulting, and is immediately attacked, and finally kills, but only in defense of his life, we cannot hold him guilty of any crime. To hold otherwise would be to deny a man the right to notice any insult or interrogate the author of any charge because he would forfeit the right to defend his life if he should be attacked. The tendency of the right to abuse is no answer to the right itself. . . ."

To put this reasoning in its proper context we need look no further than the facts in the *Shannon* case. The deceased had called Shannon a coward "in the presence of ladies." This so enraged Shannon that he sought the deceased out and the following then transpired:

". . . Again deceased repeated the remark, and appellant replied, and then deceased attempted to ride him down with a large and spirited stallion upon which he was mounted, and was only prevented from doing so by appellant catching the reins near the bit. He then drew his pistol, and held it down by his

side. A struggle ensued, deceased endeavoring to jerk his reins away and ride over appellant, both parties talking excitedly. Finally, appellant, using his pistol as a bludgeon, struck deceased, who thereupon drew his pistol and began firing, when appellant shot and killed him. . . ."

Shannon's honor had been questioned in the presence of ladies. He sought the man who called him a coward and apparently restored his reputation by causing the death of another. While chivalrous notions may have led the early court to applaud young Shannon's courage, the specter of a latter-day Shannon arming himself with a pistol and stalking his antagonist through the noon rush hour of downtown Dallas is not one that would give any rational man comfort.

No statute gives one a "right" to arm oneself and seek an explanation. A statute does provide that the use of force in self-defense is not justified in response to verbal provocation alone. V.T.C.A, Penal Code, Section 9.31(b)(1). It also limits the right to self-defense when the actor provokes the attack upon himself. V.T.C.A, Penal Code, Section 9.31(b)(4). It is difficult to see how a rational system of law could impose these limits on the right to self-defense while still allowing an individual to arm himself and seek out a "discussion" with an enemy.

The Legislature has made it unlawful for one to carry on or about his person a handgun. V.T.C.A., Penal Code, Section 46.02.

We should follow the sound reasoning of the Legislature and not blindly follow a rule established so that one could carry a pistol to seek an explanation about his being called a coward. The possession of a firearm while seeking an explanation creates a dangerous potential for violence. Even if such a rule had been appropriate in 1894, it has no place in 1979 society. Disputed matters should be settled by the court and not by guns. We should do everything possible to discourage such potentially dangerous conduct by our citizens. The "right" to go armed to seek an explanation being a judicial creation should be judicially destroyed.

The State's motion for rehearing should be granted.